14482

COX *ET AL.* v. AMERICAN OIL CO.

(191 S. E., 704)

520

October, 1936.

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Mr. S. B. Knotts, Jr.,* for respondents,

May 11, 1937.

The opinion of the Court was delivered by Mr. Justice Bonham.

Plaintiffs brought their action in the County Court for Richland County, alleging in their complaint that they had entered into a contract with the defendant in which defendant agreed to sell, and plaintiffs agreed to buy, certain oils and greases, at stipulated prices, used in their business. That this contract ran for one year. That plaintiffs have done everything obligatory on them in the performance of the contract. That the defendant has breached the said contract by refusing to fill plaintiffs' orders for the products which defendant had agreed to sell them. That the defendant had entered into an agreement with other oil companies to the effect that such other oil companies should not sell oils and greases to plaintiffs. That such agreement is "unlawful, illegal, monopolistic, and in restraint of trade, all of which was to

injure, damage and harass, retail oil dealers, and in particular the plaintiffs." That plaintiffs have been unable to purchase oils and greases from other dealers; that in consequence of defendant's breach of its contract, and of the wrongful acts complained of, plaintiffs are damaged: "(1) In the loss of profitable oil and grease business, (2) being deprived of the means with which to earn a livelihood, (3) great loss to the plaintiffs' other business operated along with their oil and grease business, (4) that the plaintiffs are deprived of maintaining a business establishment for the sale of motor oils and greases, part of their ordinary trade, and are being forced to seek other means of a livelihood."

That the aforesaid breach of contract by the defendant, and the aforesaid agreement between defendant and other oil companies, was malicious, unlawful, and a scheme to defraud plantiffs of their contractual rights, and rights to earn a livelihood, and defendant is still using unlawful methods to force plaintiffs to give up their trade or vocation.

On service of the complaint, the defendant gave plaintiffs notice that it would move the Court for an order requiring the complaint to be made more definite and certain by: (1) Stating as a separate cause of action the acts of defendant which are alleged to create a breach of the contract of August 16, 1935; (2) Stating as a separate cause of action the acts of defendant alleged to constitute a conspiracy between the defendant and other oil companies not to sell oils and greases to plaintiffs, for the purpose of injuring or destroying their business; (3) stating as a separate cause of action the acts of defendant alleged to be in violation of the State and federal laws relative to trusts, monopolies, and unfair competition; (4) stating as a separate cause of action the acts of the defendant alleged to constitute a deprivation of the means with which the plaintiffs earn a livelihood or prosecute their established business.

At the same time, the defendant demurred to the complaint; expressly reserving and not waiving its right to re-

quire the complaint to be made more definite and certain. The ground of the demurrer is that it appears upon the face of the complaint that several causes of action have been improperly united, namely:

"1. A cause of action for the alleged wrongful breach of the contract or agreement entered into between the plaintiffs and defendant on the 16th day of August, 1935, relating to the sale and purchase of lubricating oils and greases.

"2. A cause of action for an alleged conspiracy entered into between the defendant and other oil companies to injure and destroy plaintiffs' business.

"3. A cause of action for the alleged violation of State and Federal laws relating to trusts, monopolies and unfair competition.

"4. A cause of action for the alleged deprivation of the means with which plaintiffs may earn a livelihood."

The motion to make the complaint more definite and certain, and the demurrer, were heard by Judge Holman of the Richland County Court, who filed the following order:

"This matter comes on to be heard before me on motion of the defendant to require the complaint to be made more definite and certain, and specific in the particulars therein set out: * * *

"The defendant has also demurred to the complaint on the ground that several causes have been improperly united therein, namely the four causes of action which it enumerated in its motion to make more definite and certain.

"After considering the complaint and hearing arguments of counsel, I reach the conclusion that the complaint states two causes of action, one for breach of contract accompanied by an act of fraud, the other cause of action for conspiracy.

"Upon the Court ruling that two causes of action had been stated counsel for plaintiff thereupon elected to proceed on the one cause of action stated for a breach of contract accompanied by an act of fraud and to strike from the complaint all allegations as to conspiracy. That is, to strike

out the entirety of Paragraph 5 of the complaint; and those allegations contained in Paragraph 7 beginning in second line of said paragraph and reading as follows: 'And the aforesaid agreement between this defendant and the other oil companies was intentional, wilful, malicious', and substituting in its stead 'was' and beginning on the seventh line of Paragraph 7 the following: 'And is still using unlawful methods to force the plaintiffs to give up their trade or vocation and seek some other business to earn a livelihood.'

"The plaintiff having elected to proceed upon the alleged cause of action for breach of contract accompanied by an act of fraud and stricken from the complaint those allegations as to the alleged cause of action for conspiracy, leaving only one cause of action in the complaint.

"Now therefore:

"It is hereby ordered, decreed and adjudged,

"That the defendant's motion and demurrer be and the same are hereby overruled as only one cause of action is stated in the complaint as now amended and that being for the breach of a contract accompanied by an act of fraud."

Meantime the defendant filed its answer, expressly reserving and not waiving its right to require the complaint to be made more definite and certain in the particulars set forth in the notice, and to have its demurrer heard and ruled upon.

The answer admits the allegations of Paragraphs 1 and 2 of the complaint. In regard to Paragraph 3, it averred that as an incident to a written lease of property entered into between the parties on August 16, 1935, it entered into a written agreement with the plaintiffs with reference to the sale and purchase of lubricating oils and greases upon the premises thus leased to them; that the said lease and agreement was made and concluded subject in all respects to the terms, conditions, and limitations thereof and the same are made a part of this answer.

As to the allegations contained in Paragraph 4 of the complaint, defendant admits that on the 17th day of Feb-

ruary, 1936, plaintiffs placed with defendant orders for petroleum products which defendant refused to deliver for the reasons and facts hereinafter set out. It denies the remaining allegations of that paragraph.

Defendant denies the allegations contained in Paragraphs 5, 6 and 7 of the complaint.

Further answering, defendant alleges that:

"6. That it denies each and every allegation in said complaint contained not hereinabove admitted or denied.

"7. In further answer to said complaint, this defendant alleges that under the terms of the contract aforesaid the defendant herein agreed to sell and deliver to the plaintiffs, and the plaintiffs agreed to purchase from it, during the term thereof, the oils and greases and other products named therein at the prices and according to the terms, provisions and conditions, respectively stated in said agreement, for re-sale from plantiffs' premises at No. 1429 Sumter Street, Columbia, South Carolina, in the following quantities, to wit: 500 gallons Penn Amoco Oil; 1,000 gallons Amoco Oil; 200 gallons American Oil; and 1,000 pounds branded greases. It is further provided that deliveries are to be made in approximately equal monthly quantities.

"8. That under the terms of the lease hereinabove referred to the defendant let to the plaintiffs the premises located at 1429 Sumter Street, Columbia, South Carolina, and under the terms thereof it was provided that the same would continue in force until terminated by either party by twenty-four hours prior written notice from each to the other; that on the 10th day of February, 1936, in exercise of the rights reserved unto it by the instrument aforesaid, it notified the plaintiffs by registered mail of its election to terminate the lease in the manner prescribed therein, and such lease having been lawfully terminated no obligation devolved upon this defendant to deliver lubricating oils or greases, or any other petroleum products to the plaintiffs at the premises located at No. 1429 Sumter Street, because said

plaintiffs were no longer in the lawful possession of said premises and this defendant therefore denies that it has breached the contract aforesaid and denies that it is indebted to the plaintiffs in any sum whatsoever.

"9. In further answer to said complaint, this defendant alleges that the only order or request for petroleum produts received from the plaintiffs after February 15, 1936, was the order or request received on February 17, 1936, at which time this defendant was requested to deliver petroleum products to the leased premises located at No. 1429 Sumter Street, Columbia, S. C., and the said lease having been terminated in the manner prescribed therein the plaintiffs were no longer in the lawful possession thereof and this defendant could not fill such order or deliver such products, all of which was known or should have been known to the plaintiffs herein; this defendant further alleges that it did not receive any order or request from the plaintiffs to deliver lubricating oils and greases or other petroleum products to any other place or location.

"10. In further answer to said complaint, this defendant alleges that although the contract above referred to provided that the plaintiffs would purchase the aforementioned products in the lease aforesaid, and that deliveries thereof shall be made in approximately equal monthly quantities, the said plaintiffs ordered and purchased only 321 gallons of motor oil, and 268 pounds of grease, and such deliveries as were made were not made in equal monthly quantities. This defendant therefore alleges that the plaintiffs themselves had breached the said contract and are estopped and precluded from asserting any rights, claims or demands thereunder."

Omitting Paragraphs 1 and 2, the amended complaint is as follows:

"3. That on the 16th day of August, 1935, in the County of Richland and the State of South Carolina, the defendant for a valuable consideration, and by way of mutual promises entered into a contract with the plaintiffs whereby the plain-

tiffs agreed to purchase and the defendant agreed to sell lubricating oils and greases. That the plaintiffs agreed to purchase and the defendant agreed to sell 500 gallons of Penn Amoco Motor Oil, 1,000 gallons of Amoco Motor Oil, 200 gallons of American Motor Oil; and 1,000 pounds of branded greases. That the aforesaid contract was for the period of one year, with an agreement that the defendant was not to charge more than a stipulated price.

"4. That the plaintiffs have done all things necessary on their part of the aforesaid contract and the same is in full force and effect. That on the 17th day of February, 1936, and at times subsequent thereto, the plaintiffs placed orders with the defendant for the products the defendant had agreed to sell and the defendant has refused and still refuses to deliver any products to the plaintiffs which the defendant had agreed to sell.

"5. That as a direct and approximate result of the defendant's breach of their contract with the plaintiffs and the wrongful acts complained of, the plaintiffs have suffered, and are continuing to occasion great danger. That the plaintiffs are damaged: (1) In the loss of a profitable motor oil and grease business; (2) being deprived of the means with which to earn a livelihood; (3) great loss to the plaintiffs' other business operated along with their oil and grease business; (4) that the plaintiffs are deprived of maintaining a business establishment for the sale of motor oils and greases, part of their ordinary trade, and are being forced to seek other means of a livelihood.

"6. That the aforesaid breach of contract on the part of the defendant was unlawful, conceived in fraud, and born in iniquity, as a scheme and design to cheat, swindle and defraud plaintiffs of their contractual rights, the rights to earn a livelihood, all of which has damaged the plaintiffs in the sum of Three Thousand ($3,000.00) Dollars."

Thereafter plaintiffs' counsel moved to amend the amended complaint by submitting in lieu of Paragraph 5 ordered

stricken from the original complaint, the following: "That the defendant induced other oil companies for the latter to refrain from selling oils and greases to the plaintiff. That the plaintiffs, after the defendant had refused to deliver motor oils and greases, endeavored to purchase elsewhere, motor oils and greases and they have been unable to do so because the defendant had induced other oil dealers not to sell motor oils and greases to the plaintiffs. That the defendant's action in inducing other oil companies not to sell oils and greases to plaintiffs was a fraudulent scheme to cancel and breach the defendant's contract with the plaintiffs."

And by making Paragraph 7 of the complaint read as follows: "That the aforesaid breach of the contract on the part of the defendant and their scheme with other oil companies was unlawful, conceived in fraud and born in iniquity, as a scheme and design to cheat, swindle and defraud the plaintiffs of their contractual rights, all of which has damaged the plaintiffs in the sum of Three Thousand Dollars ($3,000.00)."

The motion to amend was denied by Judge Holman, and from his order to that effect no appeal was taken. Thus. after much tribulation, the decks were cleared for action. All extraneous and irrelevant matter was eliminated from the pleadings, and there was left for trial one clear-cut issue, viz., the allegation of the complaint that the defendant had breached its contract with plaintiffs, of date August 16, 1935, to sell them oils and greases, and that such breach was accompanied by a fraudulent act.

Upon this sole issue the case went to trial and resulted in a verdict for plaintiffs in the sum of $2,500.00.

We venture to think that no such record of a remarkable trial was ever before presented to a Court. Despite the fact that the Court had eliminated every issue offered by plaintiffs save that contained in the allegation of the complaint that the defendant had breached a contract, and that such

breach was accompanied by a fraudulent act, time and again plaintiffs' counsel attempted to introduce, and by his persistent questions got before the jury, the effect of the evidence he desired them to know, viz., that defendant had made an agreement with other oil companies not to sell the plaintiffs any oils or greases, and that this cause had practically driven plaintiffs out of business. Again, despite the fact that the Court had decided that the defendant was within its rights to cancel the lease under the contract of lease of premises to plaintiffs, counsel for plaintiffs persisted in offering testimony to prove that defendant had no legal right to dispossess plaintiffs. Evidently, it was the purpose of plaintiffs to prove this as an unlawful act on the part of defendant. As these oft-repeated questions were asked by plaintiffs' counsel and objected to by defendant's counsel, there followed prolonged arguments, which were necessarily included in the transcript of record in order that this Court might be apprised of the true occurrences of the trial.

As the trial progressed and these persistent efforts continued to be made to introduce improper and irrelevant testimony, the counsel for defendant moved that the trial Judge take the case from the jury and declare a mistrial because of the continued disregard by plaintiffs' counsel of the rulings of the Court. The motion was denied. In proper time motions for nonsuit, directed verdict, and new trial were made by defendant's counsel and refused. The counsel for plaintiffs also moved for directed verdict in favor of plaintiffs, which motion was also denied. In passing upon the motion for directed verdict made by defendant's counsel, the Court instructed the jury they could not find for punitive damages; therefore the verdict for $2,500.00 for plaintiffs is deduced to be for actual damages.

The defendant's appeal is predicated upon nineteen exceptions, with various subdivisions to two of the exceptions.

Plaintiffs' counsel moved to dismiss the appeal, and excepts on the ground that the defendant's appeal does not

conform to Rule 4 of the Supreme Court; and appeals on the ground that no proper case for appeal was served in due time. As to this last ground, the record contains nothing which authorizes this Court to consider it.

The motion to dismiss the appeal because it does not comply with the provisions of Rule 4 of the Court might have some merit if plaintiffs' counsel were in position to make it, but his presistent disregard of the rulings of the trial Court in various rulings is responsible for the numerous and repetitious exceptions made by the defendant; and plaintiffs' counsel cannot take advantage of a violation of this rule, in view of the effect of his own violation of the rules of the Court in relation to the introduction of evidence against, and in spite of, the rulings of the trial Court that such evidence is irrelevant and incompetent.

However, the occasion is opportune to suggest to the members of the profession that the habit of counsel of making unnecessary and repetitious exceptions, and of subdividing these into other exceptions, is contrary to the rule of the Court, and entails on this Court unnecessary work. The continued disregard of the rule may compel the Court to inflict upon the violator thereof the penalty of dismissing his case.

We shall not attempt to dispose *seriatim* of the exceptions made by appellant.

The cardinal question in this case is this:

May counsel, in the face of the rulings of the trial Judge limiting the issue to be tried to one special thing, by repeated and persistent examination of witnesses upon issues expressly excluded by the Court, and overruled when offered, thus get before the jury the matter excluded?

It is not a sufficint answer to this question to say that the trial Judge has warned the jury not to consider the testimony thus attempted to be put before it.

In this case plaintiffs, in their original complaint, attempted to interject the issue that defendant had entred into

a conspiracy with other oil companies that such other oil companies should not sell to plaintiffs oils and greases; that in consequence of this alleged conspiracy plaintiffs had been unable to buy oil and greases from any other companies. Manifestly, the purpose of offering this testimony was to get to the jury the very things which had been excluded by the Court. Yet counsel persisted, time after time, in offering it, and thus getting it into the record, despite the objection of counsel. In other words, although the Court said he could not do it, he conveyed to the jury his contention that this corporation, by a conspiracy with other oil companies, had prevented plaintiffs from buying oils and greases from these companies.

It must be borne in mind that plaintiffs and defendant entered into several simultaneous contracts. By one defendant leased to plaintiffs the premises situate at 1429 Sumter Street, Columbia, S. C., for the business of a filling station, at which plaintiffs were to handle the petroleum products sold by defendant. This lease provided that defendant was to fill plaintiffs' order for oils and greases by delivering them at these premises. This lease contract also provided that it might be terminated by either party on twenty-four hours' written notice to the other. At the same time a contract was made between the parties to this action by which defendant obligated itself to sell, and plaintiffs obligated themselves to purchase, certain quantities and amounts of petroleum products known as oils and greases in stipulated monthly quantities. Defendant contends that these contracts are interrelated and interdependent.

Contending that the lease contract for the premises at 1429 Sumter Street had been violated by plaintiffs, the defendant demanded possession of the premises, which was refused by plaintiffs. Thereupon defendant instituted proceedings in magistrate's Court to eject plaintiffs. The magistrate gave judgment for ejection. Plaintiffs appealed to the Circuit Court, which affirmed the judgment of the magis-

trate's Court; again, plaintiffs appealed to the Supreme Court, which affirmed the judgment of the Circuit Court.

Plaintiffs brought their action, which was confined by the rulings of the Court to that single issue, that defendant had violated its contract by refusing to deliver to them oils and greases as they ordered them. Defendant countered by saying that contract was dependent upon or interrelated to the lease contract which you violated. Under the contract which plaintiffs charged defendant violated, the oils and greases which defendant agreed to sell to plaintiffs were to be delivered at No. 1429 Sumter Street. That the only orders for oils and greases made by plaintiffs and not filled by defendant were made after the lease for these premises had been violated by plaintiffs and plaintiffs were in unlawful possession of them. When plaintiffs undertook to offer evidence that they were in lawful possession of the leased premises, defendant objected on the ground that that question had been adjudicated by the Court adversely to plaintiffs' contention, and the testimony sought to be introduced would be, if admitted, a collateral attack on the judgment of the Court.

There are exceptions pertaining to other matters, but the cardinal and determining ones center about the actions of plaintiffs' counsel in persistently seeking to introduce evidence upon issues which had been expressly stricken from the pleadings. The patent purpose was to get to the attention of the jury the allegations of the complaint that defendant had entered into a conspiracy, or agreement, with other dealers in oils and greases not to sell such products to plaintiffs; and that plaintiffs were unable to buy such products. Plaintiffs had elected to try their case on the sole issue of a breach of contract by defendant accompanied by a fraudulent act. The trial Judge had held that no fraud was shown, and had instructed the jury that they could not give punitive damages. The baleful effect of the course pursued by plain-

tiffs' counsel is shown by the fact that the jury found for the plaintiffs a verdict for $2,500.00 actual damages.

It is patent that this verdict was induced largely by the evidence thus improperly brought to the attention of the jury.

It does not suffice to say that the Court overruled the questions as they were asked and objected to. The asking and objections precipitated prolonged arguments which emphasized to the jury the character of the evidence objected to, and created an atmosphere hostile to the defendant, which was not allayed by the action of the Court sustaining the objections to the testimony.

In *Horsford v. Carolina Glass Co.,* 92 S. C., 236, 75 S. E., 533, 541, that eminent jurist, Mr. Justice Charles A. Woods, then a member of this Court, said:

"The general rule is indisputably established that, when in the course of a trial incompetent statements of witnesses are brought in either from accident, or when they might be reasonably, though erroneously, thought by counsel to be competent, the only remedy that the Court can afford is to grant a motion to strike out and instruct the jury to disregard the testimony. The injury resulting from the jury having heard the incompetent statement is regrettable, but the trial cannot be estopped because of such accidents and mistakes liable to occur in every trial.  *  *  *

"But when testimony manifestly incompetent and prejudicial is adduced for the purpose of having such testimony influence the jury, the party who adduces it will not be allowed to hold his verdict and assert that the Court can do nothing against the unfair advantage of having the statement before the jury, beyond striking it out and instructing the jury to disregard it. In such case it does not lie in the mouth of the offending party to say that, although he has brought in irrelevant and prejudicial testimony, the Court cannot entirely deprive him of the benefit of it. It makes no difference that defendant's counsel did not move to strike out the testimony. Had the motion been made and

granted, the plaintiff would still have had the unfair advantage of having testimony before the jury which he ought not to have offered. Justice can be satisfied only by the complete relief of a new trial. Reference to the subject in the argument was still more objectionable."

This judgment was repeated with approval in the case of *Rivers v. Industrial Life & Health Ins. Co.,* 176 S. C., 175, 179 S. E., 793.

In the case of *Glasgow v. Pacific Mills,* 109 S. C., 385, 96 S. E., 137, the Court said: "The plaintiff's counsel did put to the witness Boling questions calculated to extract incompetent and irrelevant testimony. But upon objection the questions were withdrawn. It is true that sometimes the putting of such a question might work the same mischief as the answering of it would. That, however, depends upon all the circumstances of the trial. If such questions should be persistently pressed after they had been ruled out, and with the manifest object to get by indirection and by suggestion that which it was unlawful to prove directly, then it would be good ground for the trial Court to peremptorily cut short such a procedure, or to set a verdict aside. The record does not disclose that there was such a procedure by the plaintiff's counsel in the instant case."

The expression: "The record does not disclose that there was such a procedure by the plaintiff's counsel," is not applicable to the case we are considering. The record discloses that there was on the part of plaintiffs' counsel in the present case just "such a procedure" as is condemned by the Court.

The trial Judge should have set aside this verdict; failing to do that, it becomes our duty to do so.

This conclusion practically disposes of most of the issues raised by the exceptions.

We may say that plaintiff could not collaterally attack the judgment of the Court which had adjudicated that defendant was within its legal rights when it in-

situated ejectment proceedings to recover possession of the leased premises at 1429 Sumter Street.

The exceptions impute error to the trial Judge in his charge to the jury in several particulars, viz.:

(1) "Now when one comes into Court, gentlemen, and complains of another, the law requires the one who so comes to prove one or more of the material allegations of his complaint by the greater weight or preponderance of the evidence." If this were an action in tort, predicated upon several grounds of tort, that charge would be apt and proper, because the proof by the proper weight of evidence of any one of the alleged torts, or the proximate cause of the wrong complained of, would be sufficient. But this is an action for breach of contract accompanied by a fraudulent act. It was necessary for plaintiff to prove by the preponderance of the evidence that defendant had breached its contract.

We think the charge as given was calculated to mislead the jury.

It seems unnecessary to consider in detail the further error alleged in the exceptions.

The judgment must be and is reversed, and the case is remanded for a new trial.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker and Fishburne concur.

## On Petition for Rehearing

June 11, 1937. *Per curiam.*

Respondents' counsel petitioned the Court that he be permitted to file an argument in connection with a petition for rehearing to be filed in the above-entitled case. The leave sought was granted, and the petition for rehearing has been filed.

Counsel conceives that the opinion of the Court in this case contains serious reflection upon his reputation as an officer of the Court.

We have read the petition with especial care, and in connection with it have read again the opinion in the case.

It was not the intention of the Court to make any reflection upon the character of the counsel, nor even by implication to impute turpitude to him.

The criticism of the Court was directed to counsel's attitude in the trial of the case in the matter of the introduction of testimony in relation to issues which had been eliminated from the case. They carried with them no reflection upon the character or reputation of the counsel.

The petition, predicated upon other questions, does not warrant a rehearing. Accordingly, the petition is denied.

Let this order be reported with the opinion in the case.