14618

ENTZMINGER v. SEIGLER

(195 S. E., 244)

May, 1937.

*Messrs. R. K. Wise* and *Thomas B. Whaley,* for appellant,

*Messrs. James Hopkins* and *F. Ehrlich Thompson,* for respondent,

February 10, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The complaint sets up an action for money due the plaintiff on account of certain expenditures and disbursements made by him on behalf of the defendant's intestate, for taxes and repairs on property owned by the deceased during her lifetime, and for her funeral expenses, amounting in all

to $741.65. The defendant denied the material allegations of the complaint, and counterclaimed for the sum of $1,000.00, received by the plaintiff as the beneficiary named in an insurance policy issued upon the life of the deceased; it being alleged that the plaintiff did not have an insurable interest in her life, and for that reason was not entitled to receive the proceeds of such insurance, which should have been paid to the defendant, as administrator of her estate.

A second counterclaim demands judgment for $500.00 against the plaintiff for board and lodging, alleged to have been received by him from the intestate from May 28, 1928, to November 20, 1934. The plaintiff filed a reply, denying the allegations of the counterclaim, and thereafter served notice upon the defendant that upon the call of the case for trial he would move for an order striking from the answer the first counterclaim, relating to the proceeds of the insurance policy. At the hearing this motion was granted, and the County Judge issued his order striking this counterclaim from the answer, so that in the final state of the pleadings, the action was for money had and received, with a counterclaim for board and lodging.

The facts disclose that the plaintiff and the defendant's intestate were married, and lived together as husband and wife in the City of Columbia from the year 1929 until November, 1934, when she died. This marriage was subsequently declared to be void, for the reason that the deceased had a living husband at the time of her marriage to the plaintiff.

Upon the conclusion of the testimony, the Court directed a verdict for the plaintiff for $207.75, which is the amount claimed to be due him for funeral expenses, and left for the determination of the jury the balance of the amount claimed by him. The case was submitted to the jury upon this issue, and upon the issue made by the defendant's counterclaim for board and lodging. The jury returned a verdict in favor of the defendant for $500.00.

During the trial the plaintiff made two separate motions for a mistrial, which were overruled, and thereafter made a motion for a new trial, which was likewise denied. The grounds upon which these motions were made are incorporated in his exceptions upon appeal to this Court.

We will first deal with those exceptions having to do with the alleged error of the Court in refusing to order a mistrial. The motions for mistrial were made upon the ground that counsel for the defendant persistently pursued a wholly unjustified and prejudicial course in the examination of witnesses bearing upon the issue made by the first counterclaim relating to the proceeds of the life insurance policy, despite the fact that such counterclaim had been stricken from the answer, and notwithstanding the objections made and sustained, clearly calling to their attention that the questions were improper and wholly inadmissible.

During the cross examination of the plaintiff by Mr. Hopkins, the following testimony was elicited:

"Q. * * * Harry, how much insurance did Josephine leave, when she died? A. I don't know, sir.

"Mr. Whaley: We object to that, your Honor.

"Mr. Hopkins: Well, he says that he doesn't know, so I will withdraw it.

"Q. How much money did you collect from life insurance, on the death of Josephine Nelson Goodwin, from the Metropolitan Life Insurance Company?

"Mr. Whaley: We object to that.

"A. How much did I collect?

"Q. Yes, from the Metropolitan. Didn't you collect $1,000.00? A. No, not any."

Counsel for the plaintiff immediately moved for a mistrial, upon the ground that this testimony was not only irrelevant to any issue made by the pleadings, but that it was highly prejudicial, in that it created in the minds of the jury the impression that having collected a large amount of insurance on the life of the deceased, the plaintiff had there-

fore been amply repaid for any disbursements which he might have made on her account.

The arguments for and against the motion made at this time cover fully six pages of the printed record. The respondent maintained the position that he was entitled to cross examine the plaintiff with reference to the collection of the insurance money in order to test his credibility.

During the argument counsel for the plaintiff, in the absence of the jury, made the statement that the insurance money collected by the plaintiff was not received from the Metropolitan Life Insurance Company, but from the Liberty Life Insurance Company; and he said that he made this announcement in order that defendant's attorneys might be under no misunderstanding about it. The trial Judge refused to order a mistrial, but ruled that the testimony objected to was inadmissible.

Thereafter, during the direct examination of Lillian Lykes, a witness for the defense, the record discloses the circumstances under which counsel for the plaintiff made their second motion for a mistrial. Notwithstanding the ruling of the Court on the inadmissibility of this testimony, Mr. Hopkins, of defense counsel, again invaded the forbidden territory, by eliciting testimony that the deceased had given $1,050.00 to the plaintiff. And then the witness was asked by him if this money was derived from a policy in the Liberty Life Insurance Company. This question was asked notwithstanding the fact that this information had just been given him by plaintiff's attorneys while the jury was out of the room. When plaintiff's attorneys again made vigorous objection, and renewed their motion for a mistrial upon the ground of intentional wrongdoing, resulting in prejudice, Mr. Hopkins again offered to withdraw the question, stating that it had been asked inadvertently.

It is plain that this testimony could in no way have enlightened the jury on any legitimate issue in the controversy. It is equally clear that these questions tended to seriously prejudice the plaintiff's case before the jury. And where the

damage done is ineradicable, the presence of good faith or inadvertence is of little moment.

Even striking out testimony of this character and admonishing the jury thereabout furnishes no adequate protection to the plaintiff. The ruling of the Court was clear and specific, and fully acquainted defense counsel with the fact that they could not bring out any testimony relating to the proceeds of the insurance policy. In the face of this ruling the record shows that counsel persisted with the inquiry.

A number of cases have come before this Court in recent years, wherein complaint has been made of prejudice suffered by reason of improper questions proposed in the examination of witnesses, and in the offering of improper and inadmissible evidence. *Horsford v. Carolina Glass Co.,* 92 S. C., 236, 75 S. E., 533; *Glasgow v. Pacific Mills,* 109 S. C., 385, 96 S. E., 137; *Rivers v. Industrial Life & Health Insurance Company,* 176 S. C., 175, 179 S. E., 793; *Cox v. American Oil Company,* 183 S. C., 519, 191 S. E., 704; *Collins v. A. C. L. R. Co.,* 183 S. C., 284, 190 S. E., 817.

A lengthy review of these cases would unnecessarily prolong this opinion, without special profit. They furnish no support for persistence in wrongdoing. In inadvertent cases and in cases where no prejudicial error has been present, we have given controlling effect to the judgment of the lower Court. In others, we have felt compelled to reverse. For a most interesting note on this subject, where many cases are collected from other Courts, see 109 A. L. R., 1089.

A case where counsel persists in pursuing a line of interrogation which the Court rules to be wrong, and which one reasonably well acquainted with the rules governing the admission of evidence must know to be improper and prejudicial, is to be distinguished from one where the attorney in good faith, although persistently, obtains the rulings of the Court upon the admissibility of evidence not patently inadmissible. The latter course of action does not ordinarily furnish any ground for reversal. *Collins v. A. C. L. R. Co., supra.; Birmingham Baptist Hospital v.*

*Blackwell,* 1930, 221 Ala., 225, 128 So., 389. Necessarily, each case must be judged on its own facts and circumstances. There can be no misconduct in asking a question, the propriety of which is merely doubtful.

In our opinion, the questions asked by counsel here were patently inadmissible.

While it is true that the objections interposed to the questions complained of were sustained, yet by reason of that very fact, they may have been, and probably were, the more prejudicial to the plaintiffs. All of the arguments made by counsel, for and against the second motion for a mistrial in this case, were had in the presence of the jury. By objection and by argument, the matter was particularly called to the attention of the jury. The probable and, no doubt, logical result of improper questioning is to give the jury the impression that the facts assumed actually exist, and that the reason why the opposite party objects to the questions is that he is trying to keep such facts from the jury.

The defendant here has been allowed to obtain the advantage of having the attention of the jury called to the insurance—a wholly collateral subject—upon two emphasized occasions during the trial. The reception of such evidence sometimes has a subtle influence that will act unconsciously upon the mind of the average juror, and in such a way as to negative the most direct and positive testimony. In our opinion there is a reasonable probability that the jury was influenced by such extraneous matter to the prejudice of the plaintiff. Verdicts so gained should not be allowed to stand. The only remedy is a reversal of the judgment so that a fair trial can be had.

Error is claimed because the trial Judge permitted the defense witness, Lillian Lykes, to testify over objection that the plaintiff took certain jewelry from a safe belonging to the defendant's intestate. It is urged that such testimony was irrelevant, and had no bearing on the issues made by the pleadings, and was brought out solely to

prejudice the plaintiff before the jury, and to convey to the members thereof that plaintiff was dishonest. We think the exception raising this point should be sustained.

The general rule is, that if the evidence proposed forms a link in the chain of testimony or tends in any degree to establish the fact in controversy, it should be received. We are unable to perceive the relevancy of the testimony objected to. The guilt or innocence of the plaintiff with reference to the removal or even theft of the jewelry referred to could not have any bearing upon the legitimate issue in controversy. It must be borne in mind that there were only two issues presented by the pleadings; one was the plaintiff's cause of action for reimbursement of moneys expended on behalf of the intestate, and the other was the defendant's cause of action set up in his counterclaim for board and lodging due by the plaintiff. Proof that the plaintiff had taken the valuables referred to could not have enlightened the jury on these issues.

Finally it is contended by the plaintiff that the trial Judge erred in allowing the witness, Lillian Lykes, to testify, over plaintiff's objection, to the value of the board and lodging alleged to have been received by him from the defendant's intestate, where no foundation was laid for her to testify as an expert along such lines. There is no merit in this contention. It is extremely doubtful if the value of board and lodging is a proper subject for expert testimony. But regardless of this, the witness testified that she had had experience with colored people generally (the plaintiff is a Negro; so was the deceased), and especially in the neighborhood where the plaintiff and the defendant's intestate lived; that she had paid board herself, and had knowledge of what people charged for board. In our opinion, her testimony was competent. See *Pelzer v. Ragsdale et al.*, 105 S. C., 201, 89 S. E., 705; *Collins v. A. C. L. R. Co., supra.*

Judgment reversed, and case remanded for new trial.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate on account of illness.