20003

Elijah WIGGINS, Jr., as Administrator of the Estate of Tyrone Reginald Wiggins, Appellant, v. Dorothy Brown THOMAS, Respondent
(215 S. E. (2d) 426)

*Messrs. Waldman, Joye & Thomas,* of North Charleston, and *Howe & Regan,* of Charleston, *for Appellant,*

*Messrs. Young, Clement & Rivers,* of Charleston, *for Respondent,*

*Messrs. Waldman, Joye & Thomas,* of North Charleston, and *Howe & Regan,* of Charleston, *for Appellant,* in Reply.

April 29, 1975.

LITTLEJOHN, Justice:

This action was initiated by the appellant, Elijah Wiggins, Jr., as administrator of the estate of his eight-year-old son, Tyrone, pursuant to § 10-1951 *et seq.,* Code of Laws of South Carolina (1962), referred to as the Wrongful Death Statute.

The complaint alleges that the death of Tyrone resulted from the negligent and reckless operation of a Plymouth automobile by the respondent, Dorothy Brown Thomas, in operating the vehicle at an excessive rate of speed, in failing to keep the vehicle under control, in failing to maintain a proper lookout, in failing to equip the vehicle with proper brakes or failing to apply the same if so equipped, in failing to slacken speed or deviate the course, and in failing to give any warning by horn.

The respondent interposed a general denial, and in addition alleged that the death was due to "the contributory negligence, recklessness and willfulness of plaintiff's intestate in that plaintiff's intestate darted out from behind a vehicle in the left lane of the southbound lane of Highway 52 and immediately ran into the side of the defendant's automobile and thereby brought about the unavoidable accident on the part of this defendant and the defendant was faced with a sudden emergency and applied her brakes and acted as a reasonable and prudent person would have under the circumstances."

The jury returned a verdict in favor of the respondent. The appellant submits that a new trial should be granted because (1) the judge refused to strike the "sudden emergency" allegation from the answer and charged the jury on that doctrine, and because (2) he allowed the verdict to stand although it was against the weight of the evidence.

It is the position of the respondent that the charge by the judge of the law of sudden emergency was proper, but

even if improper was harmless error. It is further the position of the respondent that the verdict is not against the weight of the evidence, and that it is amply supported by the record.

In order to determine whether the appellant is entitled to a new trial because of either issue raised, we look at the facts, about which there is little dispute.

On Thursday, August 31, 1972, at about 6:20 p. m., the respondent was driving her Plymouth car in a southerly direction toward Charleston along U. S. Highway 52. She was carrying her husband to work. The highway was described as "heavily traveled." It is a four-lane roadway, with two lanes southbound toward downtown Charleston and two lanes northbound. There is a fire, or bus, lane about ten feet wide immediately adjacent to the curb on each side of the highway. The entire roadway is estimated to be about 80 feet wide. A raised median, two feet wide, separates the northbound lanes from the southbound lanes. At the location of the accident, there is a break in the median such that motorists using the highway may turn to visit business enterprises. At the break in the median, the two southbound lanes widen into three lanes for a short distance to allow turning left safely without disturbing the flow of traffic in the two southbound lanes. There is no intersection.

Several cars, including that of the respondent, were proceeding in a southerly direction toward Charleston, using the outside lane, at a speed described by most witnesses as being about 20 miles an hour and by no witnesses as more than 30 to 35 miles an hour. It was raining lightly and the roadway was wet. The deceased, along with his brother Clifford, and boys named Tony and Julian, all about the same age, ran across the northbound lanes and stopped on the median. Tony ran across the three southbound lanes and apparently to safety. The deceased also left the median and attempted to cross the three southbound lanes.

Mr. Smalls was in the second car behind that of the respondent. He was called as a witness for the plaintiff-appellant and testified about the actions of the deceased as follows:

"Q. Now, you—can you tell me what called your attention to the children, other than the fact that you saw children on the highway? If anything?

"A. Well, what made me notice mostly was these three little boys; as far as I can remember there was three of them, I'm definite there was three, and the smallest one out of the group, it seemed as if he was getting set to run. He was swinging his arms and all of a sudden he just took off full speed.

. . . . .

"Q. About how long do you think they stood on the median?

"A. Oh, they stood there I'll say to give maybe two or three cars a chance to pass.

"Q. And this little child—do you know whether the brother was holding his hand or not?

"A. There wasn't neither one holding the other's hand.

"Q. And the whole time you saw him he was swinging his arms?

"A. Not the whole time. It just seemed like all of a sudden he got ready to run and the other two still stood there, but, he started to swinging like he was getting set and he just took a notion and left full speed."

The deceased's brother Clifford testified that he was holding Tyrone's hand when he broke loose and ran. The deceased ran into the side of respondent's Plymouth car apparently between the left front wheel and the left front door. He died from the injury sustained.

Respondent testified that there was a black car immediately preceding her in the adjoining lane of traffic, and therefore she did not see the children on the median. She

stated that she did not see the deceased until her husband said "look out," and at that time the boy hit her car. She applied her brakes, cut to the right, parked her car and came back immediately.

Appellant contends that it was error to charge the doctrine of sudden emergency. The objection is premised on the contention that there was no emergency to which respondent could have responded prior to the actual impact of the deceased with the Plymouth car. It is argued that since the respondent, by her own testimony, said that she did not see the child until her husband yelled "look out," about which time the child hit the automobile, she could not have perceived an emergency. Appellant argues that since the doctrine of sudden emergency was charged, it is possible that the jury could have concluded that there was an emergency and could have erroneously applied the doctrine.

We think the contention is more technical than real. Sudden emergency, or imminent peril, is not a defense in and of itself. Such is merely a portion of the overall charge of the law of negligence and is charged to the jury in a proper case merely for the assistance of the jurors in applying the basic law of negligence. Here the law of sudden emergency was charged along with the law of negligence, recklessness, willfulness and wantonness, as well as contributory negligence.

Even if it be found that the charge was erroneous, we are of the opinion that the jury was not misled, and there are no reasonable grounds for supposing that the jury would have reached a different verdict. In *Yaun v. Baldridge*, 243 S. C. 414, 134 S. E. (2d) 248 (1964), we held that the appellant has the burden of showing that the charge could have prejudiced the case. This he has failed to do.

From a review of the facts hereinabove cited, it is apparent that the contention of the appellant that the judge should not have permitted the verdict to stand

because it was against the weight of the evidence is without merit. The evidence is clearly susceptible of the inference that the sole cause of the collision between the deceased and the respondent's car was the fact that the deceased left a place of safety and sprinted across a busy highway, causing the collision which the respondent had no reasonable opportunity to avoid.

Affirmed.

Moss, C. J., and NESS, J., concur.

LEWIS and BUSSEY, JJ., dissent.

BUSSEY, Justice (dissenting):

Being convinced that there was prejudicial error requiring a new trial, I most respectfully dissent. His Honor, the trial judge was, I think, clearly in error in charging the jury as to the law of sudden emergency over the repeated protest of the appellant. While there are some conflicts in the evidence, in order to show the prejudicial effect of the erroneous charge, I state the evidence and the inferences reasonably deducible therefrom in the light most favorable to the plaintiff-appellant.

The respondent, aged 50 at the time of the accident, had obtained her drivers license only 10 days prior to the accident. She was driving her husband to work on a rainy afternoon and he was already 20 minutes late to work and quite some distance from his place of employment. She and her husband lived near the scene of the accident and she admitted that she was quite familiar with the fact that there were numerous children in that area and that they frequently crossed the highway at that particular location going to and from Rodenberg's Grocery. Despite such knowledge, according to her own testimony and that of her husband, she was obviously not on the lookout for children prior to the impact.

As respondent approached the location there were four children waiting on the median, one of whom crossed the

highway in front of the respondent without being seen by her. The second child, who started across was the decedent, who was likewise not seen by respondent, until the moment of impact, such being with the left-front fender of respondent's vehicle, the evidence being susceptible of different inferences as to whether contact was with the front or side of the fender. According to her testimony, and that of her husband, she was not paying any attention to anything but that which was straight ahead of her. They both testified as to a black vehicle being in the left-hand adjacent lane somewhat ahead of them giving rise to the inference that such possibly obstructed their view. The testimony of the other witnesses is to the effect that no such car was there and that the left-hand lane was entirely clear with nothing to obstruct the view of children attempting to cross the street.

The respondent and her husband were the only two eyewitnesses to the accident testifying for the respondent. They both testified positively that she did not see the deceased child until the moment of impact and there is no evidence from any other witness, or physical evidence such as skid marks, from which it could be inferred that she did in fact see the child prior to impact. There is a total absence of any evidence of either act or omission on her part, after seeing the child, which could inferably have been a causative factor in producing the accident.

The doctrine of sudden emergency as it appertains in this State is correctly set forth in the case of *McVey v. Whittington*, 248 S. C. 447, 151 S. E. (2d) 92, as follows:

"When the driver of an automobile is confronted with a sudden emergency brought about by the negligence of another and not by his own negligence, and compelled to act instantly to avoid a collision or an injury, he is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice. *Elrod v. All*, 243 S. C. 425, 134 S. E. (2d) 410."

The mere statement of the rule shows that as a prerequisite to its applicability the actor must be faced with deciding between two or more courses of action. The doctrine presupposes making a judgment in the face of pressing necessity and begins with the assumption that the actor is aware of the emergency situation. Assuming the doctrine is otherwise applicable it will isolate one from liability for not making the wisest choice in the face of an emergency so long as the choice made was that which a reasonably prudent person would have made under the same or similar circumstances. The doctrine is applicable only where the finder of fact is called upon to determine whether or not conduct, which follows being faced with an emergency, is or is not negligent. Obviously one not aware of an emergency situation would not be faced with a choice of action, and in the absence of a choice of action the doctrine of sudden emergency is totally irrelevant. I call attention to a comprehensive article on the Sudden Emergency Doctrine As Applied in South Carolina contained in 20 South Carolina Law Review 408.

No fact or facts are even mentioned in either the brief of respondent or, I submit, the opinion of Mr. Justice Littlejohn, which would make applicable a charge of the law of sudden emergency. A trial judge should not confuse a jury by charging on legal principles which are inapplicable to the case on trial and it is error for him to do so. See cases collected in West's South Carolina Digest, Trial, Key No. 250 *et seq.,* and Appeal and Error, Key No. 1066. We have on occasion held the charge of an inapplicable principle of law to be harmless error, but any inapplicable charge which tends to mislead the jury, as to the real issues, is not only erroneous but prejudicial and requires a new trial.

In determining whether an erroneous charge was or was not prejudicial, the test is not whether this Court has an opinion as to whether or not the jury was in fact confused or misled. In many instances there is no way whatever for anyone to know with any certainty whether or not the jury

was confused or misled and hence the proper test is simply whether or not there is any reasonable probability of the jury having been misled. Where there is a reasonable probability that the jury was influenced by extraneous matter to the prejudice of one of the parties, the judgment below must be reversed. *Entzminger v. Seigler,* 186 S. C. 194, 195 S. E. 244; *Powers v. Temple,* 250 S. C. 149, 156 S. E. (2d) 759.

In the instant case, at least viewed in the light most favorable to the appellant, the evidence discloses a strong case of liability on the part of the respondent, which gives rise to a most reasonable probability that the verdict for respondent was influenced by the erroneous charge. While ordinarily the sequence in which propositions of law are charged to the jury is not important, in the present case His Honor charged the doctrine of sudden emergency near the end of the charge, and at considerable length, such consuming approximately a full page of the printed transcript of record. Such, under the circumstances, increased the already high probability of prejudice from the erroneous instruction.

I would reverse the judgment of the lower court and remand the case for a new trial.

LEWIS, J., concurs.