## 18299

Jamse O. HERRING, as Administrator of the Estate of Dale Olen Herring, Respondent, v. Geneva BOYD, Appellant

(140 S. E. (2d) 246)

*Messrs. Henderson, Salley & Cushman,* of Aiken, *for Appellant,*

*Messrs. Williams & Johnson,* of Aiken, *for Respondent,*

February 4, 1965.

LEWIS, Justice.

While crossing a road or street in the Town of New Ellenton, South Carolina, Dale Herring, a child, approximately four years of age, was struck and killed by an automobile operated by the defendant. This action was then brought by the administrator of the child's estate to recover damages for his alleged wrongful death. The complaint charged that the injuries, from which death resulted, were caused by the negligent, wilful and wanton operation of the automobile by the defendant in driving it (1) at an excessive rate of speed, (2) without keeping a proper lookout, (3) without maintaining proper control, and (4) with mechanically defective brakes. The trial resulted in a verdict for the plaintif in the sum of $20,000.00 actual damages. The defendant has appealed from the lower court's refusal of her timely motions for a nonsuit, directed verdict, judgment notwithstanding the verdict and in the alternative, for a new trial. The exceptions present two basic questions for determination to wit:

(1) Was the evidence susceptible of the reasonable inference that the injuries sustained by the deceased proximately resulted from negligence on the part of defendant?

(2) If so, was prejudicial error committed in the charge to the jury so as to entile the defendant to a new trial?

This accident occurred in the incorporated Town of New Ellenton, on a Sunday morning, October 15, 1961, about 11

A. M., on a State Highway which runs approximately north and south through the town. It was a clear, warm day and the defendant was driving south along the highway at the time. The highway was hard surfaced to a width of 19 feet 5 inches with dirt shoulders and very shallow drains on each side. It is intersected by streets of the town and the accident occurred on the paved roadway between Tennessee Avenue and Neal Avenue, both avenues dead-ending at the highway, Tennessee from defendant's right and Neal about a block farther south from defendant's left. The deceased lived with his family in a home located in the southwest corner of the intersection of the highway and Tennessee Avenue.

On the morning in question and while the deceased and his father were in the yard of their home, a Mr. Cross, accompanied in his station wagon by five children, stopped to visit with deceased's father. Mr. Cross was travelling north and stopped his station wagon on his left side of the road, partly on the shoulder, facing in the direction from which defendant approached, with the wheels approximately two to two and one-half feet on the paved roadway. A few minutes after Mr. Cross had so stopped his station wagon, a passing vehicle struck and injured a dog belonging to a neighbor who lived across the highway from the home of the deceased. Shortly thereafter the deceased's father carried the dog across the road to the neighbor's house. During this time, it appears that the deceased was playing with the other children in the yard of his home between the parked vehicle and the house. Just before the accident Mr. Cross went to the opposite side of the highway, crossing in full view of the defendant. As the deceased's father was returning from the neighbor's house, he saw for the first time the defendant's vehicle and the deceased in the highway. Mr. Cross had walked across the highway and was then standing near the road. The defendant's automobile was about 4 or 5 feet from the child when the father saw it. At that time, the deceased was crossing from the rear of the parked vehicle and had

reached a point about one foot to defendant's left of the center of the paved roadway where he was struck. There was tesstimony that the deceased was not running across the road at the time, but just "trotting along the road like a child will do." The defendant was veering to her left and struck the deceased with the right front of her vehicle between the center thereof and the right headlight. Other than the defendant, the father of the deceased was the only eye witness to the actual impact.

As the defendant approached, she had a clear view of the scene for a distance of approximately three city blocks. She was driving through a residential section of the town and had passed a sign about four blocks away which warned: "Children playing—35 M. P. H." There was testimony that the left wheels of defendant's vehicle made intermittent skid or brake marks on the pavement for a distance of 59 feet before striking the deceased and 63 feet of intermittent skid marks after the impact, coming to rest on a slight embankment over which the chassis of her car dragged for the last five feet. The speed of the car was estimated at 40 to 45 miles per hour by witnesses who saw it a few moments before the impact. There was also testimony that the right wheels of the defendant's car made no skid or brake marks on the pavement, and that all of the skid marks were made by the left wheels, indicating that the brakes on the right side were not holding and those on the left side only intermittently.

The defendant testified that, as she approached the scene, she saw the Cross automobile parked partly on the pavement, facing her, in her lane of travel, and Mr. Cross run across the highway from behind his parked car, but saw no one else about the scene. At that time, she estimated her speed at twenty to twenty-five miles per hour when she was about a "car and a half length" away from the Cross automobile. Although she saw the Cross vehicle parked partly in her lane of travel and saw him run across the road from behind it, her testimony is susceptible of the inference that she did not

reduce her speed. The deceased was struck as he was apparently following Mr. Cross to the opposite side of the road. The defendant said that she did not see the deceased until just before her car struck him; that he came out from behind the parked vehicle, "in a flash," into the path of her automobile; and that she immediately put on brakes and pulled her car to the left in an effort to avoid the accident, but was unable to do so.

While the injury and death of a child from being struck by an automobile brings a keen sense of tragedy, it is recognized that a motorist is not an insurer of the safety of children. Until the driver has notice of the presence or likelihood of children near the roadway, the care to be exercised as to children is generally the same as that toward adults. 2A Blashfield's Automobile Law and Practice, Section 1492.

Accordingly, in the absence of notice of the presence or likelihood of children in or near the roadway, we have held that where a motorist is proceeding with due regard to the law of the road and the regulations governing the operation of his vehicle, he is not generally liable for injuries received by a child who enters the highway so suddenly that its driver cannot stop or otherwise avoid injuring him. *Gunnels v. Roach,* 243 S. C. 248, 133 S. E. (2d) 757; *Watson v. Aiken,* 243 S. C. 368, 133 S. E. (2d) 833; *Williams v. Clinton,* 236 S. C. 373, 114 S. E. (2d) 490; *Critzer v. Kerlin,* 231 S. C. 315, 98 S. E. (2d) 761; *Porter v. Cook,* 196 S. C. 433, 13 S. E. (2d) 486. See: 2A Blashfield's Automobile Law and Practice, Section 1498; 7 Am. Jur. (2d) 1000, Section 450; 60 C. J. S., Motor Vehicles, § 396 (b).

However, where the driver of a vehicle knows, or should know, that children may reasonably be expected to be in, near, or adjacent to the street or highway, he is under a duty to anticipate the likelihood of their running into or across the roadway in obedience to childish impulses, and to exercise due care under the circumstances

for their safety. 7 Am. Jur. (2d), Automobiles and Highway Traffic, Sections 429 and 450; 60 C. J. S., Motor Vehicles, § 396a. An excellent annotation dealing with the present question may be found in 30 A. L. R. (2d) 5.

As stated in the foregoing annotation, the circumstances are important in determining whether the standard of due care has been reached with respect to children, where the motorist knows or should know of the likelihood of their presence. For, since the law recognizes that children act upon childish impulses, there is imposed upon the motorist, in order to reach the standard of ordinary care with respect to them, the duty to exercise more vigilance and caution than might be sufficient in the case of an adult. 60 C. J. S., Motor Vehicles, § 396a; 7 Am. Jur. (2d), Automobiles and Highway Traffic, Section 429; 2A Blashfield's Automobile Law and Practice, Sections 1492 and 1497; *Hunter v. Boyd,* 203 S. C. 518, 28 S. E. (2d) 412; *Butler v. Temples,* 227 S. C. 496, 88 S. E. (2d) 586.

Whether or not a motorist has exercised due care under the circumstances, of course, must be determined under the facts of the particular case.

The defendant was proceeding through a residential area where a sign had been posted warning: "Children playing— 35 M. P. H.," and was thereby put on notice that the presence of children might be expected. Whether or not the defendant was negligent in the operation of her automobile at the time and place must be determined in the light of the foregoing notice that children might be playing near or adjacent to the highway. Also bearing upon notice to the defendant that a potential hazard existed in the highway was the fact that she was approaching an automobile parked on its left side of the road, occupying a portion of her lane of travel, and saw someone run from behind it across the road in front of her shortly before the accident.

While the posted speed limit in the area was 35 miles per hour, it was qualified by the following provisions of the 1962 Code of Laws:

Section 46-361. "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Section 46-363. "The driver of every vehicle shall, consistent with the requirements of § [Section] 46-361, drive at an appropriate reduced speed * * * when any special hazard exists with respect to pedestrians or other traffic * * *."

The fact that the posted speed limit in the area was 35 miles per hour did not authorize such speed under all conditions. The statutory speed limits are clearly qualified by the provisions of Section 46-361 to the effect that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the existing conditions, having due regard to the actual or potential hazards then existing. In the light of the testimony relating to the potential hazards existing at the time, it became an issue of fact in this case as to whether the defendant under all of the circumstances was operating her vehicle at a reasonable speed and under proper control.

In addition, there was testimony that the defendant's automobile veered gradually to its left before striking the deceased, and that the left wheels made intermittent skid or brake marks on the highway for 59 feet before the impact and 63 feet thereafter before stopping, while none were made by the right wheels. The defendant testified that she applied her brakes and was travelling between twenty and twenty-five miles per hour at the time. Under the present testimony, we think that the presence of brake marks made by the left wheels and the absence of such by the right constituted some evidence for the jury's consideration on the charge relating to defective brakes. Since there is testimony that the skid

marks began 59 feet before the impact, it is reasonable to assume, taking into consideration the accepted fact of reaction time, that the defendant saw the deceased at some point prior to where the skid marks began.

Under all of the facts and circumstances, viewed in the light most favorable to plaintiff, as we are required to do in determining whether a nonsuit or directed verdict should have been granted, we think the testimony admits of the reasonable inferences that the defendant was operating her vehicle at an excessive rate of speed, without maintaining a proper lookout or control, and with defective brakes, as a proximate result of which the accident occurred. It follows that the trial judge correctly refused defendant's motions for a nonsuit, directed verdict, and judgment notwithstanding the verdict.

The remaining questions relate to alleged error in the charge to the jury.

It is first contended that the trial judge erred in charging the following portion of Section 46-361 supra: "In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." The defendant argues that by giving the foregoing instruction the jury was allowed to conclude and find that the plaintiff's intestate in fact entered the highway lawfully and in the exercise of due care. When considered in connection with the charge as a whole, we fail to find any prejudicial error in the instruction. No one contended that the child was in the exercise of due care on entering the highway and the jury could not have been given the impression that the collision itself was evidence of the violation of this statute.

The defendant next contends that the lower court erred in refusing to instruct the jury relative to the duties of pedestrians in crossing a roadway, as set forth in Section 46-435 of the 1962 Code of Laws, the pertinent portion of which is as

follows: 'Every pedestrian crossing a roadway at any point other than within the marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

While the deceased was crossing the roadway between intersections, the statute was clearly inapplicable to the issues and the trial judge properly refused to charge it. The defendant argues that she was entitled to have her actions at the time judged in the light of the assumption that others will obey the law, and that the failure to charge the statute which required pedestrians to yield the right-of-way deprived her of this right. We are here dealing with a four year old child who was incapable of contributory negligence. The question of whether the defendant should have anticipated the presence of children in the highway is not in issue, for it is undisputed that the defendant was driving through an area where she was warned by a posted sign of the likelihood of the presence of children in or near the roadway. She was, therefore, charged with the duty of reasonably anticipating the likelihood of children running into or across the highway.

It is ordinarily true that one is entitled to act upon the assumption that others will obey the law, but such is of no avail to the defendant here since the evidence is undisputed that she had notice of the likelihood of the presence of children in the area. If the circumstances are such that a motorist does not know, or have reason to anticipate, that children might be near the line of travel, he would have the right to reasonably assume that all pedestrians in attempting to cross between intersections would yield the right-of-way and would be, under such circumstances, entitled to have Section 46-435 charged to the jury as affecting the lawfulness of the operation of his vehicle at the time. However, where, as in the instant case, a motorist knew, or should have known, that the presence of children was likely, the statute would be irrelevant because, under such circumstances, he would be charged with the duty of rea-

sonably anticipating that a child might, in obedience to childish impulses, cross the roadway without yielding. In other words, the fact that children of tender years might not yield the right-of-way in crossing the road, as required by statute, and thereby suffer injury was the very circumstance which the posted sign was intended to guard against by giving notice to motorists of the likelihood of their presence. For cases dealing with similar instructions, but under somewhat different factual situations, see: *Baker v. Richardson,* 201 Va. 834, 114 S. E. (2d) 599; *Gabbard v. Knight,* 202 Va. 40, 116 S. E. (2d) 73; *Kuklinski v. Dibelius,* 267 Wis. 378, 66 N. W. (2d) 169; *Russell v. Corley,* 212 Ga. 121, 91 S. E. (2d) 24.

The last question relates to alleged error on the part of the trial judge in charging the portion of Section 46-363, hereinabove set forth. This section provides: "The driver of every vehicle shall, consistent with the requirements of § [Section] 46-361 (supra), drive at an appropriate reduced speed * * * when any special hazard exists with respect to pedestrians or other traffic * * *." The defendant argues that there was no testimony from which the jury could conclude that a special hazard existed with respect to pedestrians or other traffic and, therefore, the instruction was inapplicable. We have previously pointed out the testimony relative to the posted sign, which gave notice of the possible presence of children, and the presence upon the highway of a vehicle parked partly in defendant's lane of travel. These were circumstances properly to be considered by the jury in determining whether the defendant was operating her automobile at the time at a reasonable speed within the meaning of the foregoing statutes. The statute in question was properly included in the charge.

Affirmed.

TAYLOR, C. J., and Moss, BUSSEY and BRAILSFORD, JJ., concur.