18144

J. B. WATSON, Administrator of the Estate of Jimmy Gantt Watson, Respondent, v. Harold L. AIKEN, and one 1954 Pontiac Tudor Automobile, 1961 S. C. License No. E-176812, Appellant.

(133 S. E. (2d) 833)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellants,*

*Messrs. Harold N. Morris* and *Paul Montjoy,* of Green-ville, *for Respondent,*

December 17, 1963.

BRAILSFORD, Justice.

This action for the alleged wrongful death of eight year old Jimmy Gantt Watson resulted in a verdict for plaintiff and defendant has appealed on the ground that the court erred in refusing his motion for a directed verdict. The issue must be resolved by determining whether the evidence, viewed in the light most favorable to plaintiff, is sufficient to support a reasonable inference that the defendant was guilty of actionable negligence in the operation of his auto-mobile, which struck a coaster wagon in which the child entered the highway from a private drive.

As the defendant approached the scene from the east, traveling on a highway with which he was not familiar, his view of the driveway on his right was obstructed by an em-bankment on which tall grass and weeds were growing. This obstruction was more than 6 feet in height to a point near the highway, whence it tapered to a few inches in height at

the entrance of the driveway. The driveway runs downgrade to the highway and the highway is downgrade in the direction of defendant's travel. At a point about opposite the driveway, Cely Road comes to a dead end in the highway traveled by defendant. The intersection is in a rural area and was unmarked by center line or highway sign.

The defendant was accompanied by his wife, seated in the middle on the front seat, and by J. Fred Roe, seated on the right side. Roe, who had not known the defendant previously, was directing him to a nearby pasture to see a milk cow which Roe had for sale.

As a witness for plaintiff, Mr. Roe testified that the defendant was driving about 40 miles per hour as he approached the scene. This witness estimated that when he first saw two boys and a wagon, they were 8 or 10 feet from the highway and the defendant's automobile was about forty to fifty feet from the driveway. Jimmy Watson was in the wagon and was being pushed rapidly toward the highway by the other boy, who was running behind it. This boy turned back after having taken a step onto the highway. The defendant, having promptly applied his brakes, almost succeeded in stopping his car before colliding with the wagon near the center of the road and did come to a complete stop within 8 or 10 feet from the point of impact. In the course of stopping, the automobile veered slightly to the left, about a foot according to the recollection of this witness. The left front of the automobile struck the wagon, "which continued on across the road."

The investigating patrolman testified that he measured the length of skid marks laid down by defendant's automobile to be 70 feet, 4 inches, and that the point of impact was in the center of the 18 foot roadway. He did not measure the distance from this point to where the car came to a stop, but, according to his best recollection, when he arrived "it was still sitting in the road *about where it happened.*" This witness also measured a distance of 50 feet to where he found

the wagon on the opposite side of the road from the driveway "along the ditch banks," and a distance of 18 feet from the wagon to a blood spot "in the grass" from which the boy's body had been removed. It may be inferred that the measurement to the wagon was made from the point of impact.

Having summarized the testimony of the only two witnesses offered by plaintiff on the issue of actionable negligence, we turn now to the defense evidence, on some of which plaintiff relies.

The defendant testified that he approached the scene at a speed of about 35 miles per hour. He did not see the driveway before the children, who had been hidden by the embankment and vegetation, suddenly appeared in view. He immediately applied his brakes and undertook to veer to the left. The car had almost stopped before the collision and it continued forward only a few more feet, "four or five feet at the most."

Defendant did not undertake to estimate in feet the distance between the automobile and wagon when he first observed the latter. When asked on cross examination for a rough estimate of how far the wagon was from the asphalt road when he first saw it, the witness replied:

"It would be hard to say without actually going back to the scene of the accident cause you got to look up the road as far as you can see into the driveway, which would be a very short distance, maybe three or four feet back from the actual shoulder of the road. Probably as far as you can see. In other words, I seen them as soon as they cleared the brush and stuff grown up where I could see them, but that was too late."

The only other eye witness to testify was defendant's wife, whose testimony was consistent with that of the other two. She estimated her husband's speed at 35 miles per hour and stated that when she first saw the wagon, "the little boy was pushing it very fast directly out into the road. * * * As he

came into the road a foot or two on the pavement he must have seen the car; he whirled around instantly. * * * We were right on him when he whirled. I don't see how we missed him."

The trial judge assigned no reason for his denial of defendant's motion for a directed verdict. In overruling an earlier motion for nonsuit, he stated:

"I conclude the seventy foot marks undisputed, seventy foot eight inches, there's some indication of an unreasonable speed. In addition, the testimony at this stage of it is that there was only a slight turning to the left, at most, not more than twelve inches.

"As I understand it, it is an eighteen foot pavement, and that left on the other side of the road a total distance unobstructed and open road of nine feet. The testimony being susceptible to more than one reasonable inference as to negligence and proximate cause.

"The motion is respectfully overruled."

There was no testimony that an automobile such as defendant's can be braked to a stop from a speed of 40 miles per hour in a lesser distance than 70 feet, 4 inches, nor is this established by the ordinary experience of mankind. Therefore, there is no support in the record for an inference resting on the length of the skid marks that defendant was driving at a speed in excess of that testified to by the only witnesses on the point. To illustrate the fallacy of inferring excessive speed from skid marks, without some evidence as to the braking distance required to stop a vehicle from the speed otherwise indicated by the evidence, see charts in Am. Jur. (2d) Desk Book, particularly Document No. 173, pg. 453, which is the chart published by the South Carolina Highway Department.

The suggestion that defendant is chargeable with negligence for having failed to miss the wagon by turning farther to the left is, in our view, unsound. It loses sight of the fact that the wagon was moving rapidly

across the highway, at a 45 degree angle according to Roe's testimony, and the defendant did not know whether it would continue on this course. The evidence indicates that the accident might have been avoided if the defendant had remained in his lane of travel or turned to the right, and plaintiff contends that he should have adopted this course. We think that either view imposes on the defendant the burden of exercising a degree of skill and foresight which the law does not require. It is abundantly clear that the defendant, without negligence on his part, was cast in a sudden emergency and is entitled to the benefit of the applicable rule, which we quote from *Porter v. Cook,* 196 S. C. 433, 13 S. E. (2d) 486:

"Persons who have to act in the face of sudden and imminent peril, are not to be judged in the light of later events, but are to be judged under all the circumstances which surround them at the time, by the standard of what a person of ordinary prudence would have been likely to do under the same conditions. If the emergency had been brought about by the defendant's own negligence a different rule would apply, but here we think the evidence shows beyond question that the situation which resulted in the tragic death of James Calvin Porter cannot properly be laid at the door of the defendant, Cook." 13 S. E. (2d) 488.

When defendant's efforts to avoid the peril are judged in the light of the emergency and by the standard of what a driver of ordinary care would have been likely to do under such circumstances, we find no evidence that he was in any way negligent.

Plaintiff contends that an inference of excessive speed may be drawn from the length of the skid marks coupled with the post collision position of the wagon—50 feet from the point of impact—and that of the intestate—18 feet beyond the wagon. The post collision positions of this rolling vehicle and its occupant have no probative value on the question of defendant's speed because the impact occurred within 10 feet

of the stopping point of the automobile, where, necessarily, it was traveling very slowly.

A number of photographs of the scene were offered in evidence, largely for the purpose of picturing the obstructions to vision. Neither the photographer nor any other expert in his field testified. In several of the pictures, dark marks appear on the road surface which were identified as the skid marks made by defendant's automobile. In three of the photographs, made with the camera pointed lengthwise the highway, these marks appear to be only a few feet long. In another, taken crosswise, they appear much longer, although their full length cannot be seen because of vegetation on the shoulder of the highway. Plaintiff would infer from the photographs "that the skid marks were darker and heavier on the asphalt surface of the highway for a few feet before the impact than they were where the skid marks began. This would indicate that the Appellant failed to maintain proper brakes or failed to make proper use of the brakes with which the car was equipped."

This argument assumes that the patrolman measured tire marks for a distance before the point at which the brakes held effectively and the tires began to skid. The pictures do not show any such marks and there is no testimony to this effect. We quote from the direct examination of the patrolman by plaintiff's counsel:

"Q. Now these marks here you indicated seventy feet and four inches skid marks. What does that mean?

"A. That's where Mr. Aiken put his brakes on and slid."

* * *

"Q. Did you check the brakes?

"A. Yes, sir, I looked the car over and I didn't find any defects on it."

No reasonable inference that the brakes were defective or ineffectively applied may be drawn from the photographs of the skid marks, which, according to the undisputed testimony, do not accurately portray their length and were not intended for nor adapted to this purpose.

Finally, plaintiff contends that it is reasonably inferable from the testimony that the defendant failed to keep a proper lookout. This is based solely upon Roe's estimate that he saw the wagon when it was 8 or 10 feet from the road, as compared with defendant's estimate that it was "3 or 4 feet from the actual shoulder of the road" when first seen by him. The defendant testified that he saw the children "as soon as they cleared the brush and stuff grown up where I could see them." He estimated the distance from this point to the "actual shoulder of the road" to be 3 or 4 feet. Mr. Roe could not have seen the boys until they cleared the obstructions, and he estimated this point to be "around 8 to 10 feet up this driveway." The difference is in the estimates of the two witnesses as to the distance between given points and does not necessarily indicate which, if either, saw the children first. But assuming that the passenger on the right saw the children an instant before the driver did, this would not indicate that the driver, who was approaching the intersection of Cely Road on his left, was not in the exercise of due care.

We are satisfied that the only reasonable inference from the evidence is that the sole proximate cause of this unfortunate accident was the impulsive act of the children in entering the highway from behind obstructions in such close proximity to defendant's approaching car that he had no opportunity to see them in time to avoid the collision by the exercise of due care. The case is similar to *Gunnels v. Roach,* 133 S. E. (2d) 757 and *Critzer v. Kerlin,* 231 S. C. 315, 98 S. E. (2d) 761, and *Williams v. Clinton,* 236 S. C. 373, 114 S. E. (2d) 490, in which the same conclusion was reached.

Reversed and remanded for entry of judgment for defendant.

TAYLOR, C. J., and Moss, LEWIS and BUSSEY, JJ., concur.