634 S.E.2d 62

The **ESTATE OF Joshua M. HALEY, by and
through its Personal Representative,
Cynthia HALEY, Appellant,**

v.

**Gary Curtis BROWN, Respondent.**

**No. 4140.**

Court of Appeals of South Carolina.

Heard June 21, 2006.
Decided July 24, 2006.
Rehearing Denied Aug. 25, 2006.

Gene M. Connell, Jr. and Robert John Johnston, both of Surfside Beach, for Appellant.

G. Michael Smith, of Conway, for Respondent.

GOOLSBY, J.

This wrongful death action was brought after a bicycle rider ran into the right-rear side panel of a pickup truck. The trial court directed a verdict in favor of the defendant, Gary Curtis Brown, who was the driver of the truck. The plaintiff, the Estate of Joshua M. Haley, by and through its personal representative Cynthia Haley, appeals. The dispositive issue is whether the trial court properly found that, when viewing, as we are required to do,[1] the evidence in the light most favorable to the Estate, the only reasonable conclusion is that the negligence of the bicycle rider, Joshua Haley, outweighed any possible negligence by Brown in light of the sudden emergency in which Brown found himself. We affirm.

Around 6:00 p.m. on August 27, 2001, Joshua, an eight-year-old boy, engaged in play with his brother, Jimmy, and Kyle Sams, both around the same age as Joshua. They were in the parking lot of a vacant bank building in Myrtle Beach located at the corner of Fifth Avenue South and Highway 17. The boys were jumping their bikes over a speed bump located a few feet from the edge of the street at Fifth Avenue South and landing their bikes in or near the street.

A driveway shielded with "extremely tall" shrubbery provided access from the parking lot to the street. Brown was driving down Fifth Avenue South when James and Kyle, riding their bicycles, exited the driveway from behind the bushes and entered Fifth Avenue South. Brown immediately swerved his pickup truck to the left to avoid hitting them. Brown turned back to the right to return to his proper lane, but he swerved to the left again when he saw Joshua suddenly appear from the driveway as Joshua jumped over the speed bump. Despite Brown's efforts, Joshua slammed his bicycle into the side of Brown's truck just above the tire. The impact threw Joshua into the street. He died the next day. At the time Joshua struck Brown's vehicle, Joshua was going an

---

1. *See, e.g., Hurd v. Williamsburg County,* 363 S.C. 421, 426, 611 S.E.2d 488, 491 (2005) ("When reviewing a ruling on a motion for directed verdict, we must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.").

estimated 10 to 15 miles per hour. Brown was traveling at or about 25 miles per hour, the posted speed limit. Also, at or near the time of impact, there was a sound of screeching tires; there is no evidence of any other vehicles besides Brown's in the vicinity. Approximately two to five seconds elapsed from the time Brown avoided the first two boys and Joshua rode his bicycle into the side of Brown's pickup truck.

The only lay witness present at the time of the collision who testified at trial was Kyle, one of the first two riders to dart out as Brown drove down the street. According to Kyle's uncontradicted testimony, Kyle had just jumped over the speed bump, landed in the street, and gotten onto the sidewalk when he heard screeching tires and then a crash. Kyle turned around to see Joshua, who had been following right behind him, lying in the street. According to Kyle, the accident "happened real quick." Kyle acknowledged he was well aware of the need to look both ways before entering a street and agreed the boys had "made a mistake." [2]

At trial, an expert witness for the Estate opined as follows: Brown would have traveled between 70 to 90 feet toward the boys once they exited the driveway and entered his field of vision; Brown had between 0.25 seconds and 2.0 seconds, the average human reaction time, to perceive the peril created by the first two children entering the street, make a decision about what evasive action he should take, and execute the evasive maneuver; at a hypothetical speed of 30 miles per hour, Brown would have traveled 44 feet per second, thus traversing his visibility field in approximately 2.0 seconds; from the time Joshua's bicycle would have became visible and impacted Brown's truck, 2.0 seconds would have elapsed, assuming Joshua was traveling 10 miles per hour; and Brown

---

2. In South Carolina, the conduct of a minor is judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances. *Standard v. Shine*, 278 S.C. 337, 339, 295 S.E.2d 786, 787 (1982). The undisputed evidence was that Joshua and the other children knew of the need to look before entering a street. Kyle's mother testified her son had known "for some time" of the need to look both ways before entering a street, he had been trained in this for his own safety, and she had the impression he understood this for several years prior to the accident. Likewise, Joshua's mother conceded her sons, including Joshua, "knew the rules of the road" and "[t]hey knew not to go in the road."

had approximately 2.0 seconds of reaction time to avoid colliding with Joshua.

Brown moved for a directed verdict on the issue of liability. The trial court granted Brown's motion, but apparently inadvertently referred to it as summary judgment. The court stated "there is no reasonable evidence to suggest to the jury that any negligence on the part of the Plaintiff could possibly be exceeded by the—any perceived negligence on the part of the Defendant. . . ."

In our view, the trial court properly directed a verdict in this case. The only reasonable inference that can be drawn from the evidence is that Joshua's negligence in running into the side of Brown's truck outweighed any possible negligence by Brown and was the more determinative factor in causing the collision.[3]

At the time of this accident, Brown was driving in his proper lane and at the posted speed limit. Moreover, there is no evidence of any impairment or recklessness on his part. Brown was confronted with an emergency situation caused solely by the first two boys wrongfully darting out of the bank parking lot into the path of his truck. He quickly made a decision to swerve to the left to avoid hitting the two boys. By choosing to swerve, Brown made a choice a person of ordinary prudence placed in the same emergency situation

---

3. Under comparative negligence, the plaintiff in a negligence action may recover damages only when his or her negligence is not greater than that of the defendant. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 245 & n. 1, 399 S.E.2d 783, 784 & n. 1 (1991) (finding the plaintiff, who ran into the back of a tractor-trailer, was not entitled to recover damages because there was no negligence on the part of the truck driver as a matter of law). The trial court should grant a motion for a directed verdict in a comparative negligence case when "the only reasonable inference that may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent." *Creech v. South Carolina Wildlife & Marine Res. Dep't*, 328 S.C. 24, 33, 491 S.E.2d 571, 575 (1997); cf. *Lydia v. Horton*, 355 S.C. 36, 40, 583 S.E.2d 750, 752–53 (2003) (noting if the evidence supports only one conclusion, the comparative fault of the plaintiff and the defendant becomes a question of law for the trial judge; the court held, in a negligent entrustment action, the plaintiff's admission that he was intoxicated and lost control of a borrowed vehicle exceeded the owner's alleged negligence in loaning him the vehicle as a matter of law).

might also make at that moment.[4]   In fact, Brown did not hit *any* of the three children that day; unfortunately, one of them, Joshua, struck him.   Even the Estate's expert witness conceded a reasonable person might also swerve his or her car to the left to avoid an accident when faced with a sudden emergency and such a maneuver would often be the quicker response.   As to this case, he further conceded[5] a collision likely would have occurred even with braking.[6]

---

**4.**   The sudden emergency doctrine does not bar a plaintiff's claim as a matter of law, but it is relevant in determining whether there is any reasonable inference that the defendant's alleged negligence outweighed that of the plaintiff.   *See Wiggins v. Thomas,* 264 S.C. 360, 365, 215 S.E.2d 426, 428 (1975) (stating the doctrine of sudden emergency is a part of the overall law of negligence); *Watson v. Aiken,* 243 S.C. 368, 373, 133 S.E.2d 833, 836 (1963) (observing when a person faces a sudden emergency, he is not to be judged in light of later events, but rather, is to be judged in light of all the surrounding circumstances, by the standard of what a person of ordinary prudence likely would have done under the same conditions); *Singletary v. South Carolina Dep't of Educ.,* 316 S.C. 153, 157, 447 S.E.2d 231, 233 (Ct.App.1994) ("Where a motorist is suddenly placed in an emergency situation, through no fault of his own, and is compelled to act instantly to avoid a collision, he is not negligent if he makes a choice that a person of ordinary judgment might make if placed in the same emergency situation."); *Alston v. Blue Ridge Transfer Co.,* 308 S.C. 292, 297–98, 417 S.E.2d 631, 634 (Ct.App. 1992) (noting the question of whether a sudden emergency existed, normally a question for the jury, can be a question for the court if the facts show no actionable negligence on the part of the defendant; the court found, as a matter of law, that the defendant made every reasonable effort to avoid a collision by attempting to brake and pull off the road when faced with the plaintiff's vehicle crossing the center line and that the allegedly excessive speed of the defendant was not the proximate cause of the accident).

**5.**   The Estate's expert witness had suggested that Brown was negligent in failing to apply his brakes rather than swerving to his left, but the expert witness agreed a collision would have occurred between the truck and Joshua's bicycle "even if [Brown had] hit the brakes." Furthermore, the evidence of screeching brakes just before Joshua crashed into Brown's truck and the lack of evidence of any other vehicles in the vicinity suggests Brown applied his brakes in an emergency fashion at the time of the collision.

**6.**   To the extent the Estate argues the doctrine of last clear chance precludes a directed verdict in this case, we find the doctrine, like sudden emergency, is simply one factor to be considered in determining the overall negligence of the parties.   Although we agree comparative negligence normally presents a jury question, where, after consideration of all the relevant factors, the only reasonable inference is that the

This situation is similar to that in *Hopson v. Clary*,[7] a case in which the plaintiff, Hopson, was driving down the street, pulled over, and attempted to make a U-turn when she was struck by the defendant, Clary, who was traveling behind her.[8] We upheld the trial court's decision granting a directed verdict to Clary, finding that, even assuming Clary was guilty of some negligent act, Hopson's own negligence in attempting "an inherently precarious maneuver without ascertaining whether she could do so safely" was, as a matter of law, greater than any negligence attributable to Clary and the more determinative factor in causing the accident.[9]

Likewise, in *Bloom v. Ravoira*,[10] our supreme court held that where a pedestrian was struck by a motorist as he attempted to cross a street, the only reasonable inference was that his own negligence was more than fifty percent, thus precluding his recovery in a negligence action against the motorist.[11] The pedestrian "entered the street quickly [in the middle of the block from between two parked cars] and without any warning to drivers."[12] The pedestrian stated he looked left and then right and then entered the street without

---

plaintiff's negligence exceeded fifty percent, it becomes a matter of law for the trial court. *See Spahn v. Town of Port Royal*, 330 S.C. 168, 173, 499 S.E.2d 205, 208 (1998) (stating the doctrine of last clear chance has been subsumed by the adoption of comparative negligence and is simply one factor to be considered in analyzing the parties' relative negligence); *Rothrock v. Copeland*, 305 S.C. 402, 405, 409 S.E.2d 366, 368 (1991) (holding last clear chance is not applicable where an emergency arises so suddenly that the defendant has no reasonable opportunity to avoid it); *Bennett v. Wilbro, Inc.*, 310 S.C. 371, 374 n. 1, 426 S.E.2d 812, 813 n. 1 (Ct.App.1992) (noting "[t]he [last clear chance] doctrine allows recovery to a victim who negligently subjects himself to harm *only* if the defendant could or should have discovered the victim's peril *and* thereafter fails to exercise *reasonable care* to avoid injury to the victim" (emphasis added)).

7.  321 S.C. 312, 468 S.E.2d 305 (Ct.App.1996).

8.  *Id.* at 313, 468 S.E.2d at 307.

9.  *Id.* at 315, 468 S.E.2d at 308.

10.  339 S.C. 417, 529 S.E.2d 710 (2000).

11.  *Id.* at 424–25, 529 S.E.2d at 714.

12.  *Id.* at 423, 529 S.E.2d at 713.

looking to the left again.[13]   He did not see the motorist.[14]   The motorist was driving no more than 25 miles per hour and was not driving recklessly.[15]

The supreme court held the pedestrian was not entitled to recover on his negligence action, stating: "Here, the undisputed facts establish that [the pedestrian] attempted to cross the street but did not do so in a safe, reasonable manner.  Any factual issues that might exist as to [the motorist's] fault in this accident cannot alter the inescapable conclusion that, as a matter of law, [the pedestrian's] fault exceeded fifty percent.  Where evidence of the plaintiff's *greater* negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury." [16]

Of particular interest is the decision of the Court of Appeals of Georgia, *Neal v. Miller*,[17] wherein it considered a scenario similar to the current appeal.  There, the court affirmed a directed verdict in favor of a defendant motorist whose car was struck on the side by the plaintiff, a nine-year-old bicycle rider who "shot out of [a steep] driveway" that was hidden from view by trees.[18]

Then there is *Dorsey v. Buchanan*,[19] in which the Court of Appeals of North Carolina found, in a situation involving the collision of a minor bicyclist and a truck driver, that the "most compelling circumstance is that [the bicyclist] collided with the truck, not vice versa. . . ." [20]   The court, in upholding the grant of a directed verdict to the truck driver, observed that "the mere occurrence of a collision between a motor vehicle

---

13.  *Id.*

14.  *Id.*

15.  *Id.* at 424, 529 S.E.2d at 713.

16.  *Id.* at 424, 529 S.E.2d at 714.

17.  194 Ga.App. 231, 390 S.E.2d 125 (1990).

18.  *Id.* at 125.

19.  52 N.C.App. 597, 279 S.E.2d 92 (1981).

20.  *Id.* at 94.

and a minor on the street does not of itself establish the driver's negligence...." [21]

## CONCLUSION

In this instance, the only allegation of negligence is that Brown should have swerved and braked; but the evidence shows Brown did swerve and applied his brakes. Moreover, even if we assume he just swerved, we still find that is a reasonable response to the hazard presented and his conduct would not, in any event, constitute the *greater* negligence. Again, Brown was *struck by* Joshua, not vice versa, and Brown did make, under any view of the evidence, at least a reasonable attempt to avoid a collision. Although we, like the trial court, are sympathetic to the loss that was incurred in this case, we feel compelled to uphold its ruling where the only reasonable conclusion is any possible negligence by Brown could not be deemed greater than fifty percent.

**AFFIRMED.**

HEARN, C.J., concurs. ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting in a separate opinion):

I disagree with the reasoning and analysis of the majority. I **VOTE** to **REVERSE** and **REMAND.**

## FACTUAL/PROCEDURAL BACKGROUND

On August 27, 2001, Joshua Haley, an eight-year-old boy, his twin brother Jimmy Haley, and their friend, Kyle Sams, who was eight-years-old, were riding their bicycles in a vacant bank parking lot at Fifth Avenue South in Myrtle Beach. The parking lot driveway, which was flanked by "extremely tall" shrubbery, was approximately 100 to 120 feet from United States Highway 17 Business (Kings Highway).

Kyle and Jimmy jumped a speed bump, which is "a couple of feet from the roadway," and "went across the other side." When Kyle and Jimmy exited the driveway, they ended up on Fifth Avenue South. At approximately the same time the

---

21. *Id.* at 95.

boys were riding their bicycles in the vacant bank parking lot, Brown, driving a 2001 Chevrolet dually truck, was driving east on Fifth Avenue South.

Kyle stated that Joshua followed on his bicycle "right after [Kyle] got across the sidewalk." When Kyle and Jimmy "came out, . . . [Brown] swerved, at some time, to the left, and then he came back to the right, and then he swerved back again to the left, and—when Josh came out." According to Kyle, "[m]e and Jimmy looked both ways, and Josh, I guess he didn't, because I was already over there, and then I just heard tires screeching, and a crash." A collision occurred between Joshua and Brown. Approximately two to five seconds passed from the time Brown saw Kyle and Jimmy until the accident with Joshua occurred. Joshua hit the right rear fender area of Brown's truck. Joshua was thrown from his bicycle into the middle of the street.

Kyle rode to a nearby putt-putt course and asked them to call the police. He then rode his bicycle home to advise his mother, Terry Blackmon Sams, about the accident. Kyle asked her to return to the scene of the accident with him. Kyle informed his mother that he, Joshua and Jimmy "were jumping the speed bump, going across Fifth Avenue . . . [a]nd him and Jimmy had got across, and [Josh] was the one that was behind, and he said that he tried to tell [Josh] to stop, but [Josh] couldn't."

When the paramedics arrived at about 6:08 p.m., they found Joshua lying in the street with extensive injuries. The paramedics transported Joshua to Grand Strand Regional Medical Center. Joshua died of his injuries at the Medical University of South Carolina the next day. According to the Deputy Coroner of Horry County, the cause of death was "[t]raumatic brain injury."

Joshua's mother, Cynthia Haley, personal representative of the estate, filed this action alleging wrongful death. Brown filed an answer generally denying the allegations in the complaint and raising the defenses of sole negligence of Joshua, unavoidable accident, sudden emergency, and comparative negligence of Joshua.

During the trial, Haley presented the testimony of an expert witness, Robert K. Taylor; one of the boys, Kyle

Coleman Sams; Haley's mother, Cynthia Haley; Kyle's mother, Terry Blackmon Sams; an investigating officer, Michael J. Marsh; two EMS employees, Everette Kinsley Elmore, III and Bryan T. McGarrahan; one of the responding police officers, Carol Ann Allen; and J. Dan Bellamy, Sr., Deputy Coroner. Haley's attorney published two separate Requests for Admissions:

> These Requests for Admissions, as the Court has already explained, are going to be given to you, but I want to read those to you before Mr. [Robert] Taylor testifies. The first one is dated May 24th, 2004, and it's a Request for Admission from Mr. Brown to us, and it reads as follows: "As you were traveling on 5th Avenue South you saw two young boys from a driveway to your right, and cross your lane of travel in front of you?" And the response is: "Admitted, but boys crossed the roadway very quickly."

> Request for Admit Number 2 is dated January 4th, 2005, ... and it says, "As you were traveling on 5th Avenue South you saw two young boys coming from a driveway to your right, and cross your lane of travel in front of you?" And the response by Mr. Brown and his lawyer [is]: "Admitted, however, at least one of the boys made a hard left turn in front of the Defendant, and rode his bicycle along the right side of his automobile. Due to that maneuver, the Defendant instinctively turned his wheel to the left to avoid colliding with that child. The Defendant is unaware, at this time, of the path of the second child."

At the close of Haley's case, Brown moved for a directed verdict on the issue of liability, claiming (1) Haley's expert held Brown to a standard not recognized in South Carolina; (2) the only evidence is that Brown was faced with a sudden emergency situation and, as a matter of law, Haley's claim must fail; (3) the only reasonable inference is that the court must direct a verdict for Brown because "there was absolutely no negligence on the part of Mr. Brown"; and (4) if Brown was negligent, his negligence was outweighed by Joshua's negligence. In opposition to Brown's motion, Haley argued: (1) the cases cited by Brown were decided before the doctrine of comparative negligence was adopted; (2) the doctrine of last clear chance applied and it was a jury question; (3) all of the testimony presented by Haley at trial indicated Brown

should have anticipated this accident and should have stopped; (4) because this case dealt with children, there was a different standard of care which required this case be submitted to the jury; and (5) there was sufficient evidence of negligence on Brown's part to submit the case to the jury.

The circuit judge declared: "The only thing in this case that keeps the Defendant in was how he reacted in the sudden emergency. Any negligence that could possibly be attributed to him would have had to be attributed to him as to how he reacted to that emergency." The judge determined:

> Any evidence that the—that in the two seconds, while the Defendant was successfully avoiding the only two children he saw, that he should have consciously become aware that children were in play in the area, so as to raise his duty of care and take appropriate steps to avoid hitting any other children that may later come out of the parking lot is not, in this Court's judgment, reasonable, [t]hat requiring—that would require to go to the jury when, in fact, the Defendant did avoid hitting the second child. The second child—or the third child, unfortunately, hit the Defendant.

The judge ruled:

> The loss of a child is an unspeakable tragedy, but in this case there is no reasonable evidence to suggest to the jury that any negligence on the part of the Plaintiff could possibly be exceeded by the—any perceived negligence on the part of the Defendant, inasmuch as the sudden emergency doctrine only requires a reasonable effort to avoid an accident. In this case even the expert said he took a reasonable effort to avoid the accident.

The judge explained: "I think that is a matter of law, that . . . any reasonable testimony of negligence should go to the jury, and I think that it would be unreasonable to allow them to pass on a question of fact that this Court is susceptible of only one inference, and that is that that was not unreasonable." The judge further concluded: "Our Supreme Court has said many times that it's a rare situation, indeed, that summary judgment should be granted in a negligence action, however, in this Court's view, this is one of those rare cases."

## *STANDARD OF REVIEW*

The circuit judge's use of the terminology summary judgment is erroneous. The procedural posture of the case was beyond the purview and ambit of a summary judgment analysis. The ruling of the circuit judge will be analyzed and reviewed as a directed verdict motion.

Rule 50(a), SCRCP, provides:

(a) Motion for Directed Verdict: When Made: Effect. When upon a trial the case presents only questions of law the judge may direct a verdict. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

Note 2 to Rule 50 states: "The motion for directed verdict may be made at the close of plaintiff's evidence, as well as at the close of all the evidence. This is an alternative to the present motion for involuntary dismissal (non-suit) which is also available."

In ruling on a motion for a directed verdict, the trial court must view the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. *Erickson v. Jones St. Publishers, LLC,* 368 S.C. 444, 629 S.E.2d 653 (2006); *Proctor v. Department of Health Envtl. Control,* 368 S.C. 279, 628 S.E.2d 496 (Ct.App.2006); *The Huffines Co., LLC v. Lockhart,* 365 S.C. 178, 617 S.E.2d 125 (Ct.App.2005); *see also Anderson v. Augusta Chronicle,* 365 S.C. 589, 619 S.E.2d 428 (2005) (when reviewing order granting directed verdict, appellate court must view facts in light most favorable to nonmoving party); *Heyward v. Christmas,* 357 S.C. 202, 207, 593 S.E.2d 141, 144 (2004) ("On review of a ruling granting a directed verdict, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party against whom

the verdict was directed."). In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or nonexistence of evidence. *Long v. Norris Assocs., Ltd.,* 342 S.C. 561, 538 S.E.2d 5 (Ct.App.2000). This court is not concerned with the weight of the evidence, but whether there is any evidence from which the jury is warranted in making a finding. *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994).

A motion for directed verdict goes to the entire case and may be granted only when the evidence raised no issue for the jury as to liability. *Carolina Home Builders, Inc. v. Armstrong Furnace Co.,* 259 S.C. 346, 191 S.E.2d 774 (1972); *Huffines,* 365 S.C. at 187, 617 S.E.2d at 129. When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Huffines,* 365 S.C. at 187, 617 S.E.2d at 129; *Sims v. Giles,* 343 S.C. 708, 541 S.E.2d 857 (Ct.App.2001). The trial court must deny the motion when either the evidence yields more than one inference or its inference is in doubt. *Law v. South Carolina Dep't of Corr.,* 368 S.C. 424, 629 S.E.2d 642 (2006); *McMillan v.Oconee Mem'l Hosp., Inc.,* 367 S.C. 559, 626 S.E.2d 884 (2006); *Huffines,* 365 S.C. at 187, 617 S.E.2d at 129.

When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence. *Erickson,* 368 S.C. at 462, 629 S.E.2d at 663; *Pond Place Partners, Inc. v. Poole,* 351 S.C. 1, 567 S.E.2d 881 (Ct.App. 2002). The issue must be submitted to the jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. *Huffines,* 365 S.C. at 188, 617 S.E.2d at 129–30. The appellate court must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor. *Erickson,* 368 S.C. at 462, 629 S.E.2d at 663; *Harvey v. Strickland,* 350 S.C. 303, 566 S.E.2d 529 (2002); *Proctor,* 368 S.C. at 293, 628 S.E.2d at 503; *see also Huffines,* 365 S.C. at 188–89, 617 S.E.2d at 130 ("Essentially, our Court must resolve whether it would be reasonably conceivable to have a verdict for a party opposing the motion under the facts as liberally construed in the opposing party's favor."). A directed verdict is warranted when the case presents only questions

of law and should be allowed only if the evidence would not be legally sufficient to sustain a verdict for the opposite party. *McEntire v. Mooregard Exterminating Servs., Inc.*, 353 S.C. 629, 578 S.E.2d 746 (Ct.App.2003).

If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury. *Erickson*, 368 S.C. at 462, 629 S.E.2d at 663; *see also Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 303 S.C. 384, 386, 401 S.E.2d 153, 154 (1991) ("In ruling on motions for a directed verdict ..., the trial court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party, and if it is susceptible of more than one reasonable inference, the case should be submitted to the jury."); *Proctor*, 368 S.C. at 292, 628 S.E.2d at 503 (noting if evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied). However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury. *Hanahan v. Simpson*, 326 S.C. 140, 485 S.E.2d 903 (1997); *Proctor*, 368 S.C. at 292–93, 628 S.E.2d at 503.

When this court reviews a trial court's grant or denial of a motion for directed verdict, we reverse only when there is no evidence to support the ruling or when the ruling is governed by an error of law. *Webb v. CSX Transp., Inc.*, 364 S.C. 639, 615 S.E.2d 440 (2005); *Huffines*, 365 S.C. at 188, 617 S.E.2d at 130; *see also Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct.App.2000) (noting appellate court will reverse trial court only when there is no evidence to support ruling below).

## LAW/ANALYSIS

### I. Standard of Care for Minors

Haley maintains the circuit judge should have considered Joshua's standard of care and denied the directed verdict motion.

In *Standard v. Shine*, 278 S.C. 337, 295 S.E.2d 786 (1982), our supreme court enunciated the standard of care involving minors:

Heretofore, we have held, by analogy to the criminal law, that a child under seven years of age was conclusively

presumed to be incapable of contributory negligence; a rebuttable presumption existed that a child between the ages of seven and fourteen was incapable of contributory negligence; and a child of fourteen years and over was presumed capable of contributory negligence. *Chitwood v. Chitwood,* 159 S.C. 109, 156 S.E. 179 (1930); *King v. Holliday,* [116 S.C. 463, 108 S.E. 186 (1921)]. However, we have never addressed the primary negligence of minors, the issue before us today. Despite our previous holdings, the prevailing view in cases of both primary and contributory negligence of minors is that no arbitrary limits as to a minimum age should be set. The capacities of children vary greatly, not only with age, but also with individuals of the same age. Therefore, no very definite statement can be made as to just what standard is to be applied to them. § 32 Prosser on Torts (4th Ed.). Of course, a child of tender years is not required to conform to an adult standard of care. The Restatement (Second) of Torts § 283A suggests that a minor's conduct should be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances.

Today we adopt that standard of care for minors in both primary and contributory negligence cases. Insofar as today's decision differs from our previous cases dealing with the contributory negligence of minors, those cases are overruled.

*Standard,* 278 S.C. at 338–39, 295 S.E.2d at 787. In *McCormick v. Campbell,* 285 S.C. 272, 329 S.E.2d 752 (1985), the court again addressed the issue:

In *Standard v. Shine,* 278 S.C. 337, 295 S.E.2d 786 (1982), we abrogated the arbitrary age presumptions in determining a minor's negligence or contributory negligence holding the behavior of minors under the age of fourteen should be judged by the conduct expected of a minor of like age under like circumstances.

*McCormick,* 285 S.C. at 273, 329 S.E.2d at 752; *see also Inman v. Thompson,* 297 S.C. 221, 223, 375 S.E.2d 358, 359 (Ct.App.1988) ("Our Supreme Court in *Standard v. Shine* adopted the Restatement's view that 'a minor's conduct should be judged by the standard of behavior to be expected of a

child of like age, intelligence, and experience under like circumstances.' ").

This court, in *Brown v. Smalls*, 325 S.C. 547, 481 S.E.2d 444 (Ct.App.1997), suggested the following charge in regard to minors under the age of fourteen:

A child under the age of fourteen years is not required to conform to an adult standard of care. A minor's conduct should be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience under like circumstances. A child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable the child to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a minor who has not yet attained majority may be quite as capable as an adult of exercising such qualities.

*Brown*, 325 S.C. at 556, 481 S.E.2d at 450.

Subsequently, in *Jones ex rel. Castor v. Carter*, 336 S.C. 110, 518 S.E.2d 619 (Ct.App.1999), this court instructed:

Under the holding in *Standard*, what specific behavior is legally expected of a minor under fourteen becomes a question of fact decided on the circumstances of each case. Even though one child of a given age may be completely incapable of acting in accordance with a given adult standard of care, another child of the same age may have sufficient maturity and knowledge such that a jury could reasonably expect that child to act as an adult should under the same circumstances. *See Brown*, 325 S.C. at 556, 481 S.E.2d at 449. Thus, in the wake of *Standard*, where there is evidence that a minor should be expected to exhibit a certain level of care, *Herring [v. Boyd*, 245 S.C. 284, 140 S.E.2d 246 (1965) ] can no longer operate to prevent a jury, in determining the child's negligence or comparative negligence, from considering the child's failure to exercise that level of care. A child under fourteen therefore may be, but is not necessarily, negligent for failure to obey an adult standard of care.

*Jones*, 336 S.C. at 117–18, 518 S.E.2d at 622–23 (footnote omitted).

## II.  Expert Witness

At trial, Haley presented Robert K. Taylor, an engineer, as an expert witness. The court qualified Taylor as an expert in the fields of accident reconstruction and human factors. Brown did not object.

A plethora of South Carolina cases allow testimony by experts in accident reconstruction and experts in human factors. *See, e.g., Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000) (circuit judge allowed testimony of accident reconstruction expert); *Oliver v. South Carolina Dep't of Hwys. & Pub. Transp.,* 309 S.C. 313, 422 S.E.2d 128 (1992) (allowing testimony of accident reconstructionist); *Trivelas v. South Carolina Dep't of Transp.,* 357 S.C. 545, 593 S.E.2d 504 (Ct.App.2004) (admitting testimony of human factors analyst and accident reconstructionist); *South Carolina Farm Bureau Mut. Ins. Co. v. Wilson,* 344 S.C. 525, 544 S.E.2d 848 (Ct.App.2001) (trial judge allowed Robert Taylor, a mechanical engineer and accident reconstructionist, to testify); *Gazes v. Dillard's Dep't Store, Inc.,* 341 S.C. 507, 534 S.E.2d 306 (Ct.App.2000) (finding sufficient factual basis existed to support accident reconstruction expert's opinion); *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 462 S.E.2d 321 (Ct.App.1995) (circuit judge allowed testimony by expert qualified in fields of human factors and psychology).

After analyzing the evidence, Taylor offered the following opinions: (1) Brown was negligent; (2) Brown had "ample warning . . . that there were children playing in the area"; (3) two young boys "came out of the parking lot and into the street" and caused Brown to swerve; (4) Brown "did not . . . recognize the hazard and the responsibility that there are children playing here"; (5) Brown "did not react to the possibility of, there are children playing here and I need to take the appropriate action, which is, drastically slow down quickly, so that if there are any other children they don't run the risk of an accident, or a severe accident"; (6) Brown "did not use that caution that you should be using when you are alerted to the fact that there are children playing there right at you in the street"; (7) Brown was driving "about twenty-five miles an hour, plus or minus some," at the time Haley "pulled out"; (8) Haley "was not going especially fast" on his bicycle, but was within "a range of ten to fifteen miles an hour

for the bicycle"; (9) "the road is wider where this accident occurred than where it is when you go back toward the campground"; (10) when Brown "saw the first two bicyclists, he was in the range of approximately ninety feet from where he would end up impacting with [Haley], so . . . in the range of approximately ninety feet before the point of . . . impact, was where he would have first had visibility of the two boys"; (11) "if you go and calculate Mr. Brown's likely speed at the point of impact, it would be higher, taking into consideration that [Haley] is forced down the road by the truck, by the impact, than it would be if he just went straight to the pavement at the point of impact"; (12) Brown's responses to the Requests for Admission were "inconsistent" which "indicates a lack of recall of what really happened"; (13) Brown "did not do substantial braking when he was alerted to the children playing—riding bicycles into the street"; (14) "stopping was something that could have been done, or coming very close, down to two or three or five miles an hour, to make sure everything was clear"; (15) Brown could see about five hundred feet down Fifth Avenue South into the parking lot where Haley was; (16) Brown could clearly see back up Fifth Avenue South; (17) regarding the area where the children were playing, "[t]here was an unobstructed view of the part near the street, and then back on the side in the parking lot beside the bank"; (18) "[t]here is a special situation when children are playing in or near the road, particularly if they are active"; (19) "swerving and braking becomes very important when there is a reasonable possibility of other children"; and (20) Brown had "a long shot of a perspective into th[e] parking lot area where the boys had been."

Here, the circuit judge qualified the expert but erroneously ignored his opinions.

### III.   Doctrine of Last Clear Chance

Haley alleges the doctrine of last clear chance mandates reversal of this case and its submission to a jury.

Under the doctrine of last clear chance, a plaintiff who negligently subjects himself to a risk of harm may recover when the defendant discovers or could have discovered the plaintiff's peril had he exercised due diligence, and thereafter fails to exercise reasonable care to avoid injuring the plaintiff.

*Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991); *Jones v. Atlanta–Charlotte Air Line Ry. Co.,* 218 S.C. 537, 63 S.E.2d 476 (1951).

Historically, South Carolina treated the doctrine of last clear chance as separate and distinct from contributory negligence on the theory that the plaintiff's negligence has become remote such that the defendant's negligence is the sole proximate cause of an injury. *See, e.g., Smith v. Blackwell,* 250 S.C. 170, 156 S.E.2d 867 (1967); Hubbard and Felix, *Comparative Negligence in South Carolina: Implementing Nelson v. Concrete Supply Co.,* 43 S.C. L.Rev. 273 (1992). However, in *Spahn v. Town of Port Royal,* 330 S.C. 168, 499 S.E.2d 205 (1998), our supreme court declared: "[The doctrine of] last clear chance has been subsumed by adoption of comparative negligence such that it remains a factor for the jury's consideration in comparing the parties' fault, but that it does not totally relieve a plaintiff of his or her negligence." *Id.* at 173, 499 S.E.2d at 208. The *Spahn* court addressed "whether the elements of the doctrine are to be charged to the jury in weighing the parties' fault in a comparative negligence case." *Id.* at 174, 499 S.E.2d at 208. The court set forth the following jury charge and found it was appropriate in the context of a comparative negligence case:

> In determining the relative percentages of negligence for the plaintiff and the defendant, you should consider, as a factor relevant to the defendant's share of negligence, whether the plaintiff was in peril and unable to extricate himself from the peril. If the plaintiff was in peril, you should also consider whether the defendant was aware of that peril and if he was, whether the defendant could have then avoided the injury to the plaintiff if the defendant had used due care at that point.

*Id.*

Because of the expert's testimony, the doctrine of last clear chance should have been submitted as a factor for the jury's consideration.

## IV. Sudden Emergency Doctrine

Haley contends the circuit judge erred in holding the sudden emergency doctrine barred his claim. Haley argues that,

like the doctrine of last clear chance, the sudden emergency doctrine is a factor to be considered by the jury in comparative negligence cases.

Our supreme court discussed the sudden emergency doctrine in *Elrod v. All*, 243 S.C. 425, 134 S.E.2d 410 (1964):

In determining whether or not the operator of an automobile was justified in turning out to the left, the usual rules applicable to acts in emergencies generally apply. When the driver of an automobile is confronted with a sudden peril brought about by the negligence of another, he is not held to the exercise of the same degree of care as when he has time for reflection. If he has used due care to avoid meeting such an emergency, and after it arises he exercises such care as a reasonably prudent driver would use under the attendant circumstances, he is not negligent. In *Porter v. Cook*, 196 S.C. 433, 13 S.E.2d 486, 488 [ (1941) ], the Court said: "It is settled by a great body of decisions that an automobile driver, who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or an injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice."

*Elrod*, 243 S.C. at 437–38, 134 S.E.2d at 417. The *Elrod* court further determined: "Ordinarily, the question of sudden emergency is for the jury, but if the proof shows no actionable negligence on the part of the appellant, it is the duty of the Court to so declare as a matter of law." *Id.*; *see also Green v. Sparks*, 232 S.C. 414, 102 S.E.2d 435 (1958) (noting it was for the jury to determine whether in the sudden emergency which confronted the plaintiff, he exercised ordinary care and judgment in his actions); *Alston v. Blue Ridge Transfer Co.*, 308 S.C. 292, 297, 417 S.E.2d 631, 634 (Ct.App.1992) ("The question of whether a sudden emergency existed is normally a question for the jury, but becomes a question for the court where the facts show no actionable negligence on the part of the defendant.").

In *Poulos v. James*, 254 S.C. 156, 174 S.E.2d 152 (1970), the supreme court noted: "An emergency has been defined as a

sudden or unexpected event or combination of circumstances which calls for immediate action." *Id.* at 159, 174 S.E.2d at 154 (quotations omitted).

When the driver of an automobile is confronted with a sudden emergency brought about by the negligence of another and not by his own negligence, and is compelled to act instantly to avoid a collision or an injury, that driver is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in a like position might make, even though he did not make the wisest choice. *Clark v. Cantrell,* 339 S.C. 369, 529 S.E.2d 528 (2000); *McVey v. Whittington,* 248 S.C. 447, 151 S.E.2d 92 (1966); *Benchoff v. Morgan,* 302 S.C. 116, 394 S.E.2d 19 (Ct.App.1990); *see also Still v. Blake,* 255 S.C. 95, 177 S.E.2d 469 (1970) (concluding sudden emergency doctrine properly was charged to jury where plaintiff veered left to avoid colliding with defendant's vehicle, which had signaled to turn right but unexpectedly turned left); *Alston,* 308 S.C. at 297, 417 S.E.2d at 634 (emphasizing that, where a motorist is suddenly placed in an emergency situation, through no fault of his own, and is compelled to act instantly to avoid a collision, he is not negligent if he makes a choice that a person of ordinary judgment might make if placed in the same emergency situation); *accord Spahn v. Town of Port Royal,* 326 S.C. 632, 486 S.E.2d 507 (Ct.App.1997) (finding sudden emergency doctrine properly was charged to jury where police officer's vehicle injured plaintiff as plaintiff was trying to retrieve his boat from middle of road), *aff'd as modified,* 330 S.C. 168, 499 S.E.2d 205 (1998); *Singletary v. South Carolina Dep't of Educ.,* 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994) (stating it was a jury question on whether defendant school bus driver acted prudently under sudden emergency doctrine when driver failed to pull off foggy highway after bus stalled, and was struck from rear by plaintiff's vehicle). In order for the doctrine of sudden emergency to apply, it must be shown that: (1) the person was confronted with an emergency, or with what appeared to be an emergency; (2) the emergency was not caused or contributed to by the person; and (3) in meeting the emergency, the person acted as a person of reasonable prudence would or might have acted under the same or similar circumstances.

The sudden emergency doctrine is intended to protect a driver who, while acting with due care, suddenly finds himself in an emergency situation due to the negligent or wrongful acts of another. *Clark*, 339 S.C. at 392, 529 S.E.2d at 540. The doctrine does not apply when a party's own negligence creates the very emergency in which he finds himself. *Id.*

Persons who have to act in the face of sudden emergency are not to be judged in the light of later events but are to be judged under all the circumstances which surround them at the time by the standard of what a person of ordinary prudence would have been likely to do under the same conditions. *Watson v. Aiken*, 243 S.C. 368, 133 S.E.2d 833 (1963); *Porter v. Cook*, 196 S.C. 433, 13 S.E.2d 486 (1941).

Sudden emergency is not a defense in and of itself. *Brooks v. Brooks*, 288 S.C. 71, 339 S.E.2d 531 (Ct.App.1986). It is simply a part of the overall law of negligence and is charged to the jury in a proper case to assist the jury in applying the principles of negligence. *Wiggins v. Thomas*, 264 S.C. 360, 215 S.E.2d 426 (1975); *Brooks*, 288 S.C. at 73, 339 S.E.2d at 532.

With the adoption of comparative negligence, the sudden emergency doctrine is now only a factor in the total fault analysis. The Supreme Court of Kentucky, in *Regenstreif v. Phelps*, 142 S.W.3d 1 (Ky.2004), analyzed whether the sudden emergency doctrine had been subsumed by comparative negligence:

> The sudden emergency qualification was not subsumed by the comparative negligence doctrine. In comparative negligence, the plaintiff's damages are reduced in proportion to his or her fault. A party's fault is determined by evaluating his or her conduct in consideration of the duties he or she is bound to observe. "[T]he sudden emergency doctrine is merely an expression of the reasonably prudent person standard of care. It expresses the notion that the law requires no more from an actor than is reasonable to expect in the event of an emergency." In other words, in the comparative negligence case, "[t]he sudden emergency instruction informs the jury ... how it is to allocate fault and apportion damages when the conduct of the person in question is that of an 'ordinarily prudent person' when faced

with an emergency situation." "Significantly, the doctrine explains to the jury the standard of conduct expected of defendants *and* plaintiffs who act under the stress of an emergency situation."

With the adoption of comparative negligence, the sudden emergency doctrine is now only a factor in the total fault analysis....

The core principle of comparative negligence is that "[o]ne is liable for an amount equal to his degree of fault, no more and no less." The sudden emergency doctrine necessarily complements this principle in those particular cases where additional circumstances alter the way in which one's degree of fault should be determined. We find no friction between comparative negligence and the sudden emergency doctrine....

*Regenstreif,* 142 S.W.3d at 5–6 (footnotes omitted). Unlike the *Regenstreif* court, the Court of Appeals of Tennessee, in *Ross v. Vanderbilt Univ. Med. Ctr.,* 27 S.W.3d 523 (Tenn.Ct. App.2000), found the sudden emergency doctrine was subsumed into Tennessee's comparative fault scheme. The *Ross* court inculcated:

The main issue in this case is brought about by the ongoing effort of our courts to resolve certain pre-*McIntyre* doctrines in accord with a system of comparative fault. Specifically at issue is the sudden emergency doctrine which has been addressed by the supreme court on two occasions since the adoption of comparative fault. First, in *Eaton v. McLain,* 891 S.W.2d 587 (Tenn.1994), the court took the opportunity to provide trial courts with some guidance as to how to apportion fault between parties. In so doing, the court stated, as dicta, that "[t]he policy considerations underlying ... the doctrine of contributory negligence ... have been implicitly subsumed by our decision in *McIntyre* and should also impact the jury's apportionment of fault between the parties in an appropriate case." *Id.* at 592. The court proceeded to say that "[i]n summary, the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: ... the existence of a sudden emergency requiring a hasty decision." *Id.* Again, in *McCall v. Wilder,* 913 S.W.2d 150 (Tenn.1995), the sudden emergency doctrine was

addressed and was, this time, actually at issue in a case involving an automobile accident. The defendant, the administrator of the decedent's estate, alleged that the accident was an unavoidable consequence of a sudden emergency created when the decedent suffered a seizure while driving. The court of appeals had upheld the trial court's grant of summary judgment reasoning "that the case fell within the 'established principles in this state that an automobile accident resulting from an unavoidable sudden emergency, such as an epileptic seizure, negates negligence.'" *Id.* at 152. The supreme court vacated the award of summary judgment holding that "[t]he doctrine no longer constitutes a defense as a matter of law but, if at issue, must be considered as a factor in the total comparative fault analysis. Accordingly, the doctrine of sudden emergency does not negate defendant's liability in the case before us as a matter of law." *Id.* at 157. In so holding, the court quoted Eaton stating that "[t]he sudden emergency doctrine ... has now been subsumed into Tennessee's comparative fault scheme." *Id.* (citations omitted).

. . . .

As articulated in *Eaton* and *McCall*, the adoption of a comparative fault scheme modifies the way that the sudden emergency doctrine operates as applied to both plaintiffs and defendants seeking to rely on the doctrine. Specifically with regard to plaintiffs, the doctrine is no longer needed as an exception to contributory negligence to ameliorate the plaintiff's claim. Rather, the circumstances taken into account by this doctrine are now some of many considerations to be addressed when assessing relative degrees of fault. *Eaton*, 891 S.W.2d at 592.

As for defendants, prior to *McIntyre*, the sudden emergency doctrine constituted a defense as a matter of law if properly established by the defendant. *McCall*, 913 S.W.2d at 157 ("[t]he doctrine no longer constitutes a defense as a matter of law"). Now, it is only a factor in the total fault analysis. *Id.* This is true in a comparative fault analysis when both parties are allegedly at fault. It is likewise true when the analysis is only of the defendant's fault because, as in the case at bar, there has been no allegation that the plaintiff was at fault.

*Ross,* 27 S.W.3d at 527–28; *see also Eaton v. McLain,* 891 S.W.2d 587 (Tenn.1994) (stating the sudden emergency doctrine has been implicitly subsumed and should impact the jury's apportionment of fault between the parties in an appropriate case). Similarly, the Court of Appeal of Louisiana, in *Jefferson v. Soileau,* 864 So.2d 250 (La.Ct.App.2003), explicated:

> The City–Parish also claims that the "sudden emergency" instruction was inappropriate under the facts of this case because the "sudden emergency" doctrine was subsumed in comparative fault. However, the First Circuit recently stated in *Duzon v. Stallworth,* 01–1187 (La.App. 1 Cir. 12/11/02), 866 So.2d 837, writs denied, 03–0589, 03–0605 (La.5/2/03), 842 So.2d 1101, 1110, that even though the "sudden emergency" doctrine was developed when contributory negligence was a complete bar to recovery, we continue to apply the doctrine today.

*Jefferson,* 864 So.2d at 253.

The analysis and ruling in regard to the doctrine of last clear chance by the *Spahn* court is instructive and edifying as we examine the viability of the doctrine of sudden emergency as juxtaposed to the doctrine of comparative negligence. Concomitantly, I hold that the doctrine of sudden emergency has been subsumed by adoption of comparative negligence such that it remains a factor for the jury's consideration in comparing the parties' fault, but that it does *NOT* totally relieve a party of his or her negligence.

The circuit judge erred in finding the sudden emergency doctrine precluded this case from being submitted to the jury.

## V. Comparative Negligence

The Supreme Court of South Carolina adopted the doctrine of comparative negligence in *Nelson v. Concrete Supply Co.,* 303 S.C. 243, 399 S.E.2d 783 (1991):

> Having determined comparative negligence is the more equitable doctrine, we now join the vast majority of our sister jurisdictions and adopt it as the law of South Carolina to the extent set forth below. For an exhaustive analytical discussion of the history and merits of comparative negligence, we refer the bench and bar to the opinion of Chief

Judge Sanders in *Langley v. Boyter*, 284 S.C. 162, 325 S.E.2d 550 (Ct.App.1984).

For all causes of action arising on or after July 1, 1991, a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence. If there is more than one defendant, the plaintiff's negligence shall be compared to the combined negligence of all defendants. *See Elder v. Orluck*, 511 Pa. 402, 515 A.2d 517 (1986).

*Nelson*, 303 S.C. at 244–45, 399 S.E.2d at 784 (footnote omitted). This Court further discussed the doctrine in *Ott v. Pittman*, 320 S.C. 72, 463 S.E.2d 101 (Ct.App.1995):

If a plaintiff was negligent as a matter of law, and that negligence proximately caused the injury complained of, under the doctrine of contributory negligence, the plaintiff was automatically barred from recovery. Under the doctrine of comparative negligence, negligence by the plaintiff does not automatically bar recovery by the plaintiff unless his negligence is greater than that of the defendant.

*Ott*, 320 S.C. at 80, 463 S.E.2d at 106; *see also Hopson v. Clary*, 321 S.C. 312, 468 S.E.2d 305 (Ct.App.1996) (stating plaintiff's claim was barred under comparative negligence doctrine because plaintiff's own negligence was, as a matter of law, greater than any negligence attributable to defendant and the more determinative factor in causing the accident). Comparative negligence is an affirmative defense in South Carolina. *Ross v. Paddy*, 340 S.C. 428, 532 S.E.2d 612 (Ct.App. 2000).

Under the comparative negligence doctrine, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant. *Hurd v. Williamsburg County*, 363 S.C. 421, 611 S.E.2d 488 (2005); *Bloom v. Ravoira*, 339 S.C. 417, 529 S.E.2d 710 (2000); *Trivelas v. South Carolina Dep't of Transp.*, 357 S.C. 545, 593 S.E.2d 504 (Ct.App.2004). Generally, under a less than or equal to comparative negligence rule, determination of respective degrees of negligence attributable to the plaintiff and the defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn. *Trivelas*, 357 S.C. at 549–50, 593 S.E.2d at 506;

*Brown v. Smalls,* 325 S.C. 547, 481 S.E.2d 444 (Ct.App.1997); *see also Hurd,* 363 S.C. at 429, 611 S.E.2d at 492 (noting determination of respective degrees of negligence attributable to plaintiff and defendant presents a question of fact for the jury, at least where conflicting inferences may be drawn); *Thomasko v. Poole,* 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002) ("Because the term is relative and dependant on the facts of a particular case, comparing the negligence of two parties is ordinarily a question of fact for the jury."); *Creech v. South Carolina Wildlife & Marine Res. Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997) (holding comparison of plaintiff's negligence with that of defendant is question of fact for jury to decide). "Accordingly, apportionment of negligence, which determines both whether a plaintiff is barred from recovery or can recover some of his damages and the proportion of damages to which he is entitled, is usually a function of the jury." *Brown,* 325 S.C. at 559, 481 S.E.2d at 451.

In a comparative negligence case, the trial court should grant a motion for directed verdict if the sole reasonable inference which may be drawn from the evidence is that the non-moving party's negligence exceeded fifty percent. *Hurd,* 363 S.C. at 429, 611 S.E.2d at 492; *Thomasko,* 349 S.C. at 11, 561 S.E.2d at 599; *Bloom,* 339 S.C. at 422, 529 S.E.2d at 713; *see also Trivelas,* 357 S.C. at 549–50, 593 S.E.2d at 506 ("In a comparative negligence case, the trial court should only determine judgment as a matter of law if the sole reasonable inference which may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent."). "For these reasons, this Court is reticent to endorse directed verdicts in cases involving comparative negligence." *Thomasko,* 349 S.C. at 11, 561 S.E.2d at 599.

## *CONCLUSION*

I hold the trial judge erred in granting a directed verdict in Brown's favor. The evidence is susceptible to more than one inference. An analysis of the evidentiary record reveals paradigmatically the existence of factual issues which must be resolved by the trial jury. Accordingly, I **VOTE** to **REVERSE** the judge's order granting Brown's directed verdict motion and **REMAND** the case.